ANNA MARIA SCHMIDT and others *vs.* EMIL SCHMIDT and others.

## December 7, 1891.

**Probate of Will—Appeal to District Court—Trial by Jury.**—In an appeal to the district court from an order of the probate court admitting or refusing to admit a will to probate, a party has not a constitutional right to a trial by jury of the issue of the validity of the will.

**Order of Trial—Limits of Cross-Examination.**—Chapter 193, Laws 1885, has not changed the order of trial or the rules of cross-examination so as to permit a party to introduce a part of his own case in chief by cross-examination of his opponent's witnesses.

**Will—Mental Incapacity—Undue Influence.**—Mental incapacity and undue influence, such as will invalidate a will, defined.

**Findings—Evidence.**—Evidence *held* to support the findings.

An instrument executed March 24, 1890, was admitted to probate in Dakota county as the last will of Gottfried Schmidt, late of that county, against the objections of Anna Maria Schmidt, his widow, and the devisees under an earlier will. The contestants appealed, on questions of law and fact, to the district court for the same county, where their motion that certain questions as to the execution of the will, the competency of the testator, and as to fraud and undue influence be submitted to a jury was denied, and the cause was tried by *Crosby*, J., who found the instrument to be the last will of the testator and entitled to probate, and ordered judgment affirming the order appealed from. The contestants appeal from an order refusing a new trial.

*Henry C. James*, for appellants.

*Stringer & Seymour* and *Hodgson & Schaller*, for respondents.

MITCHELL, J.  The principal question in this case is whether, upon an appeal to the district court from an order of the probate court admitting or refusing to admit a will to probate, a party has a constitutional right to a trial by jury of the issues as to the validity of the proposed will.  The validity of the will which the probate court admitted to probate in this case was contested on the grounds (1) that it was never properly executed; (2) that the testator was not, at the time of its execution, of sound and disposing mind; (3) that its execution was procured by the undue influence of certain of the beneficiaries.  When the matter came on for trial, the appellants moved that these issues should be submitted to a jury, which the court refused.

If the statutes of the state are valid, there can be no doubt that the appellants had no absolute right to a jury trial.  From the earliest days of the territory down to date the statute has always been that a party is entitled to a jury trial, as a matter of absolute right, only of an issue of fact in actions for the recovery of money only, or of specific real property, or for divorce on the ground of adultery; but that every other issue of fact must be tried by the court, subject, however, to the right of the parties to consent, or of the court to order, that the whole issue or any specific question of fact be tried by a jury.  Rev. St. 1851, c. 71, §§ 6, 7; Gen. St. 1866, c. 66, §§ 198, 199; Gen. St. 1878, c. 66, §§ 216, 217.  Prior to 1874 the statute regulating appeals from the probate court made no special or express provision as to the mode of trial.  This left the matter to be controlled by the general provisions of statute already referred to.  The Laws of 1874, c. 71, § 2, (Gen. St. 1878, c. 49, § 19,) expressly provided that no jury trials should be allowed in such cases, except as provided by Gen. St. 1866, c. 66, § 199, (Gen. St. 1878, c. 66, § 217,) and upon issues settled in accordance with the rules of court.  This in fact made no change, such being already the law.  This same provision, in substance, unless appeals from the allowance or disallowance of a claim against the estate be an exception, is re-enacted in the Probate Code of 1889, § 261, (Laws 1889, c. 46.)

Section 4, art. 1, of the state constitution, ordains that the right of trial by jury shall remain inviolate, and shall extend to all cases

at law, without regard to the amount in controversy. The doctrine of this court, from *Whallon* v. *Bancroft*, 4 Minn. 70, (109,) down to *State* v. *Minn. Thresher Mfg. Co.*, 40 Minn. 213, (41 N. W. Rep. 1020,) has uniformly been that the effect of this constitutional provision is merely to continue unimpaired and inviolate the right of trial by jury as it existed in the territory at the time of the adoption of the constitution; that it neither added to nor took from that right, except that, for reasons explained in *Whallon* v. *Bancroft, supra,* it was extended to all "cases at law," without regard to the amount in controversy. It would not be claimed that a proceeding to probate a will is a "case at law," as that term is generally understood or construed by this court. It therefore follows that a right of trial by jury in such proceedings was not given by the territorial statutes in force at the time of the adoption of the state constitution, and consequently is not within the constitutional guaranty, if those statutes are controlling.

Counsel for appellants, however, seeks to avoid this result by the following line of argument, to wit: That the right of trial by jury in the territory was determined by article 7 of the amendments to the constitution of the United States, as the paramount law, that "in suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved;" that this had been construed by Justice Story in *Parsons* v. *Bedford*, 3 Pet. 433, to embrace all suits not of equity or admiralty jurisdiction, whatever may be the form which they may assume, to settle legal rights; that the issues as to the validity of a will involve legal rights, and therefore are within the guaranty of the federal constitution, and consequently the right of trial by jury was continued by the constitution of the state. While this mode of reasoning is ingenious, we think it is hardly sound. The immediate question being, not what construction the federal courts might have put on the federal constitution had the question arisen before them during the existence of the territory, but the construction to be placed on our own constitution, we should rather look to the provisions of our own statutes at the time of its adoption (and which were presumably supposed to have been the law at that time) in order to determine what the people of the territory understood and intended in adopting the provision that the right of

trial by jury, as it then existed, should remain inviolate. If counsel's reasoning is sound, then certainly many of the decisions of this court are erroneous, for there are numerous proceedings to determine legal rights, neither of equity nor admiralty jurisdiction, which we have held did not come within the constitutional guaranty. But, as was said in *Comrs. of Mille Lacs Co.* v. *Morrison*, 22 Minn. 178, if this language in the *dictum* of Justice Story was used in the sense ascribed to it by counsel, it is certainly too broad. We have found no case in which the supreme court of the United States has *decided* that article 7 is to be construed as having any such comprehensive meaning. On the contrary, many decisions may be found which assume or imply that the phrase "suits at common law" is used in the ordinary and much more limited sense, viz., what were called "common-law actions." See Miller, Const. U. S. 492.

Counsel has exhaustively cited and discussed the authorities to show that at common law the rule was that, whenever in an equity suit the issue was *devisavit vel non*, the heir was entitled to have it heard by a jury, and that the equity court always either ordered the issue to be sent to the common-law court to be tried by a jury, or else suspended proceedings in the cause in order to enable the parties to bring an action of ejectment. As suggested by respondents' counsel, the question is not, what was the rule at common law? but what was the rule in this territory at the time of the adoption of the constitution? But an examination of the origin and history of the rule to which counsel refers will show that it grew out of a condition of things which no longer exists; and hence that it furnishes little support to counsel's contention. While formerly, in England, the ecclesiastical courts had exclusive jurisdiction of the probate of wills of personal property, they had no jurisdiction of devises of land. Until within the last 35 years there was no provision whatever in that country for probating wills devising land, but in any trial at common law or in equity involving the title, the original will had to be produced and proved, as any other disputed instrument. If the action was one of ejectment in a court of common law, of course it was triable by jury. While a court of equity would not, in an adversary suit, entertain jurisdiction to determine the validity of a will,

yet they necessarily had to pass upon the validity of wills in cases where the question came up collaterally in cases falling under some well-recognized head of equity jurisdiction, as, for example, trusts.

As is well understood, it was the practice of equity courts, in cases where legal rights were involved, and where there was great difficulty in deciding upon the facts on account of the conflict of evidence, to direct an issue to be sent out to be tried by a jury in a court of common law. They would not direct such an issue, however conflicting the evidence, if the court was able to come to a conclusion satisfactory to its own mind. Neither would an issue be ordered on a mere suggestion on the record, unsupported by evidence, in opposition to evidence on the other side. But in all cases, with two exceptions, the matter of ordering an issue to be tried by a jury was entirely in the sound discretion of the chancellor. The two exceptions were that of the heir-at-law who was disinherited by the will of the freehold estate of which his ancestor died seised, and that of the right of a rector to the tithes of his parish. So high were these rights anciently regarded that a court of equity would never, against the objection of the heir or rector, take upon itself to pass upon them without having the verdict of a jury. In the case of a will devising real estate, the court would always first obtain the verdict of a jury upon the issue of *devisavit vel non*, and then govern its own judgment accordingly. This idea of the peculiar sacredness of the right of the heir to the land of his ancestor grew out of the political institutions and the system of land tenure which then obtained. This rule was so universal, and of such long continuance, that in this country, when the different states generally established a system of probate courts with jurisdiction over the probate of wills of real estate as well as of personal property, they were so far influenced by the precedents of the past that they sometimes provided that the probate of a will devising real estate should be only *prima facie* evidence of its validity, in which case, of course, the whole question was still open to contest by the heir in an action of ejectment. In some instances, we believe, it was expressly provided by statute that, where the question of the validity of a will affecting real estate arose in the probate proceedings, the probate court should order the issue to be tried by a jury in a common-law

court. The causes which gave rise to this distinction between wills of real and of personal property having to a great degree ceased to exist, the general tendency of modern legislation has been to do away with it, and, as in this state, to make the probate of a will conclusive in all cases, and to make the trial of issues in contests over the validity of all wills conform to the mode of trial of court cases. This our statutes, territorial and state, from the earliest date, have assumed to do; and we do not think there is or was any constitutional obstacle in the way of so doing. If, as counsel for appellants claims, we are bound by the old common-law rule, it would lead to the result that, when the will affects real property, a party is entitled to a jury trial, but not if it affects only personalty,—a distinction which is out of harmony with the general policy of our laws, to say nothing of the very apparent practical difficulties that would arise in attempting to apply it.

It must be admitted that it has been the usual practice in this state to submit the issue of will or no will to a jury. This is perhaps to be accounted for in part by the characteristic conservative tendency of the bench and bar to adhere to old precedents, even after they have ceased to be obligatory. It is also true that, in theory at least, such an issue is one eminently fitted to be submitted to a jury, although in practice it must be admitted that the result is not always satisfactory, for the question with the jury in such cases is very apt to be, not whether the instrument is the will of the testator, but whether it is such a will as they think he ought to have made.

Our conclusion being that the appellants had no absolute or constitutional right to a trial by a jury, we are not called upon to determine whether the exercise of the discretion of a court in ordering or refusing to order an issue in a "court case" to be submitted to a jury is open to exception, or is the subject of review on appeal, for appellants made no showing except the mere demand that the issues be submitted to a jury. Moreover, the evidence shows that no other verdict could have been arrived at by a jury, or, if arrived at, sustained, except in accordance with the findings of the court.

There is nothing in the remaining assignments of error, except the last, of sufficient importance to require special notice. They are all in our judgment, clearly without merit. The evidence referred to

in assignments 10 to 19, inclusive, was properly excluded, as not being proper cross-examination. If the evidence was competent as bearing upon the mental and physical condition of the testator, the appellants should have introduced it as a part of their own case, when they might have examined the witness as if under cross-examination, as authorized by Laws 1885, c. 193. But this statute was never intended to change the order of trial or the rules of cross-examination so as to permit a party to inject a part of his own case into the cross-examination of his opponent's witnesses.

The only remaining question is whether the evidence justified the findings of fact. Of this there can be no possible doubt. The evidence of the due execution of the will was plenary. Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It may be exercised through threats, fraud, importunity, or by the silent, resistless power which the strong often exercise over the weak and infirm; but, however exercised, it must, in order to avoid a will, destroy the free agency of the testator at the time it was made, so that the instrument in fact expresses the mind and intent of some one else, and not his own. *Nelson's Will,* 39 Minn. 204, (39 N. W. Rep. 143;) *Mitchell* v. *Mitchell,* 43 Minn. 73, (44 N. W. Rep. 885.) It is elementary law that mere mental and physical weakness, caused by age or sickness, does not amount to mental incapacity, provided the party is capable of fairly and reasonably understanding the matter in hand. The test as to what constitutes a sound and disposing mind is that the testator shall understand the nature of the act and its effect; that is, shall understand the extent of the property of which he is disposing, and be able to comprehend and appreciate the claims of others upon his bounty to which he ought to give effect. Soundness of mind, such as will enable a person to make a will, has relation to the business to be transacted, viz., the disposition of his property. He must be able to understand and carry in his mind in a general way the nature and situation of his property, and his relations to those who would naturally have some claim to his remembrance. *Banks* v. *Goodfellow,* L. R. 5 Q. B. 549; *Whitney* v. *Twom-*

*bly,* 136 Mass. 145; *Hammond* v. *Dike,* 42 Minn. 273, (44 N. W. Rep. 61.) Measured by such tests as these, the evidence was such as not only to justify, but to absolutely require, the findings which the trial court made. Had he found otherwise, it would, in our opinion, have been error.

Order affirmed.