ANNA FISCHER and Another v. JOSEPH J. SPERL.[1]

April 28, 1905.

Nos. 14,203—(7).

**Will—Undue Influence.**

Where a will is sought to be avoided on the ground of undue influence, evidence which reasonably tends to show a mental condition rendering the testator susceptible to such influence should be received.

**Setting Aside Gift.**

Courts of equity, on grounds of public utility, set aside donations of property made to a donee who stands in a confidential or fiduciary relation to the donor, both where the gift is by deed or contract inter vivos and where it is by will. This rule is applied generally to such relations, and specifically to bequests to a child by a parent.

**Burden of Proof.**

The mere facts of such relationship and of opportunity to exercise influence do not cast on the child the burden of proving that a will in its favor was not obtained by fraud or undue influence, although, in connection with other sufficient circumstances, that onus may shift from the persons contesting such will to the child proposing it.

**Same.**

Under the circumstances of this case, *held*, that the burden of proof rested upon contestants.

**Question for Jury.**

The question of undue influence is one of fact for trial by a jury. Except in clear cases, a court is not justified in directing judgment notwithstanding the verdict of a jury that a will in favor of a child by a parent was obtained by undue influence.

**New Trial.**

Where the presence of suspicious circumstances is inconsistent with such an entirely clear case, and the trial court is satisfied that the party against whom the verdict is rendered is entitled to some relief, the common-law remedy was to grant a new trial. That remedy has not been changed by chapter 320, p. 729, Laws 1895.

**Judgment Notwithstanding Verdict.**

Under the circumstances of this case, *held*, that it was error in the trial court to order judgment notwithstanding a verdict that a will was obtained by undue influence.

1. Reported in 103 N. W. 502.

Appeal by plaintiffs from an order of the district court for Brown county, Webber, J., granting a motion for judgment in favor of defendant, notwithstanding the verdict. Reversed and remanded, with leave to defendant to apply for new trial.

*Hoidale & Somsen*, for appellants.

*Jos. A. Eckstein* and *Somerville & Olsen*, for respondent.

JAGGARD, J.

On July 7, 1903, Anton Sperl died, leaving a properly executed will, made on June 10, 1903, whereby he bequeathed the bulk of his estate to his oldest son, the defendant and proponent. That will was admitted to probate against the objections made by two other children, appellants Anna Sperl (by marriage Anna Fischer) and Otto Sperl. An appeal was taken to the district court, where the issues involved were tried to a jury. The court instructed the jury that the will had been duly and legally executed, and that deceased was of sound and disposing mind when the will was made, but submitted to it the question of undue influence. The jury found on this question in favor of the contestants. A motion for judgment notwithstanding the verdict, made by proponent, was granted. From an order confirming the probate of said will this appeal was taken.

The assignments of error cover a number of rulings on the exclusion of evidence, the charge of the court that the deceased was of sound mind and of sufficient mental capacity to make a will, and the order of the court directing judgment notwithstanding the verdict.

The only error in the rulings upon evidence calling for special attention is the fourteenth assignment, namely:

> The court erred in sustaining respondent's objection to the following offer of proof made by appellants: Offer in writing as follows: "We propose to prove by this witness that deceased said to her that he had been to the depot to take the train, and that while there his mind had become blank, and that when he came to himself he found that the train had gone."

This statement was made to the witness in the month preceding the testator's death. The court proceeded upon the theory that he would allow appellants to show only the sanity or insanity of the testator at

the time of his death, and all that had any tendency to show undue influence. It is obvious that all competent evidence should be received which reasonably tends to prove the mental condition of the testator at a date sufficiently recent to affect his susceptibility to undue influence. So far as the record reveals, and the general objection of the proponent suggests, this testimony should have been received.

On the merits the record presents the contention of appellants, the contestants, in the alternative, namely:  (1) That by reason of the confidential relation between the proponent and deceased, and of other circumstances proven, the burden was cast upon the proponent to show by clear and satisfactory evidence that the execution of the will was not procured by undue influence, and that proponent had not so conclusively proven his case as to justify the court in setting aside the verdict; or (2) that, if such were not the rule as to the burden of proof, then the evidence introduced by the contestants was sufficient to sustain the verdict.  On the other hand, the proponent insists that the burden of proof rested on the contestants to show undue influence, and that this, as a matter of law, they had failed to prove.

The first question accordingly to be considered is, what are the circumstances in the record tending to show undue influence?  The contestants enumerated sixteen circumstances which they urged sustain their contentions.  A brief summary of them is sufficient for present purposes.

The father left the bulk of his estate, some fifteen or twenty thousand dollars, to his oldest son, who seems to have been in better financial condition than the other children, and gave to his other three sons and one daughter only $200 each out of his insurance.  Of these children the contestants had both lived with the father until after they were of age, without pay for their hard labor.  The testimony revealed considerable family unhappiness, and some disgrace, because of the conduct of one of the sons, who is not a contestant.  Abundant opportunity on the part of the proponent to exercise undue influence was shown.  Upon the refusal of the son contesting here to go back to the farm, the proponent sold out his business at the solicitation of his father, and, with his family, lived in the same house with his father for five years.  The other children were significantly absent from home and from the testator thereafter and when the will was made.

The proponent gradually became the head of the house. His interest, influence, power of mind, and his actual control over the testator also appear. He manifested a pronounced desire for property, and is a strong and positive man. He gradually assumed dominion over his father's affairs. Repeated and careful examination of his own testimony serves to increase an unfavorable estimate of his craftiness. He was not required by law to be disinterested, or to act in accordance with the normal desire to secure mutual affection between members of the family, but he manifests objectionable subtlety and suspicious acquisitiveness. Under his original agreement with his father, he orally leased the farm for five years, for an equal division of crops. The crops were gathered in common bins, from which, after the first year, seed was taken. Afterwards the farm was run without any division of profits; father and son worked together so as to build up the farm and pay the debts. The money was kept in one common "pile" under lock and key held by proponent. The amount due each was never figured up, nor was any accounting had. When the father wanted money, he asked the son for it. The latter handled all the money. Personal property gradually became the property of the son. Proponent was asked:

> Q. Whatever you bought became yours, and not his? A. Yes. * * * Q. That is, what was his was yours, but what was yours wasn't his? A. Well, that was his too. Generally, when—when he needed money to pay off his debts on the land, because he used more anyhow than I did, but he says, All the machinery and what stock is growing up is yours.

All of the land also went to the proponent by devise. He took notes from his father for money loaned by him to the latter. According to the proponent's own testimony, he put into the transaction some $2,500, but there was testimony that a considerable sum of money of the father's was also used by them jointly.

There was little direct evidence of constraint in the execution of the will. On the one hand, a witness of the contestants testified that the father had said

> That Joe (the proponent) "is after him that he should write everything to his name," * * * and he (the father) says

"he couldn't do that, because, one—one part, Joe isn't his boy at all, and then still he has got other children besides Joe, and still he might need it himself."

On the other hand, on behalf of proponent, witnesses testified that the father said some years before the will was made, in substance, that the other children had been disobedient, and had left him, and that he should give Joe everything. But a witness for the contestants testified that after this the father had expressed an intention of making an equal distribution.

To show the susceptibility of the testator to influence it was proven that he was at the time of his death sixty or sixty two years of age; that for about a year before his death he had suffered from cancer of the stomach, with respect to which, shortly before his death, he made a trip to a distant city to consult a specialist. There he fainted, and became so weak that he had to be put to bed while visiting a friend. He "looked very bad." He then realized that he could not live. This was a day or two before the will was made. He came back to respondent's house, and the next day went from there to a lawyer's office, where his will was drawn. There was no proof of any other independent advice. He then went to contestants' house and the next morning to the hospital for an operation. A few days after returning from the hospital, he died. Respondent showed that the testator was a man of strong will and stubborn disposition, and that he had transacted some business of his own.

The second question to be considered is what significance has been given to such circumstances by judicial decisions? That legal significance is determined by the salutary rules by which, upon grounds of public utility, courts of equity set aside donations of property made to a donee who stands in a confidential or fiduciary relation to the donor. Huguenin v. Baseley, 14 Ves. 273, 2 White & T. Lead. Cas. Eq. * 556, 6 Eng. Rul. Cas. 834, per Lord Eldon; Ashton v. Thompson, 32 Minn. 25, 18 N. W. 918. Originally that jurisdiction did not apply to wills, because, inter alia, in cases of gifts or contracts inter vivos, there is a transaction in which the person benefited at least takes part, whether he unduly urges his influence or not, and in calling upon him to explain the part he took and the circumstances that

brought about the gift or obligation the court is plainly requiring of him an explanation within his knowledge. In case of a legacy the legatee may have no part in or even knowledge of the act. Parfitt v. Lawless, L. R. 2 P. & D. 462.

Inasmuch as, however, the force of the reasoning involved is not naturally confined to any particular class of cases, and inasmuch as proof of undue influence on a testator must concern things hidden from ordinary knowledge, and provable in large measure by circumstances only (In re Hess' Will, 48 Minn. 504, 51 N. W. 614; Shepardson v. Potter [Mich.] 18 N. W. 575; Thompson v. Thompson, 49 Neb. 157, 68 N. W. 372; 1 Prob. Rep. An. 111, note p. 119), and inasmuch as both common-law and statutory rules of evidence exclude conversations between the deceased testator and persons interested, necessarily a large part of testimony ordinarily available, the rules have been gradually extended until the subject is commonly treated as if they applied indifferently to wills and to deeds and contracts inter vivos. See Tyrrell v. Painton, L. R. Pro. Div. [1894] 151, 157, and cases hereinafter cited.

These rules govern bequests and gifts between persons in confidential relations generally. Their principle is that of Samuel Romilly's celebrated reply in Huguenin v. Baseley, supra, from the hearing of which Lord Cottenham said in Dent v. Bennett, 4 My. & Cr. 277, "I received so much pleasure that the recollection of it has not diminished by the lapse of more than thirty years," viz.: "The relief stands upon a general principle, applying to all the variety of relations in which dominion may be exercised by one person over another." And see Smith v. Kay, 7 H. L. Cas. 779; Coulson v. Allison, 2 De Gex, F. & J. 521; 36 Can. L. J. 690; Fisher v. Bishop, 108 N. Y. 25, 15 N. E. 331.

The circumstances relied upon by the contestants are to be considered in connection with the extreme circumspection (Newhouse v. Godwin, 17 Barb. 236) with which the law regards particularly large bequests by a parent of a number of children to one having the opportunity and manifesting a disposition to unduly influence the testator, and its just rule that it will avoid such discriminations when they appear not to have been clearly "righteous." Porter v. Throop, 47 Mich. 313, 11 N. W. 174; Ashton v. Thompson, 32 Minn. 25, 41, 18 N. W. 918;

Spargur v. Hall, 62 Iowa, 498, 17 N. W. 743; Davis v. Dean, 66 Wis. 100, 26 N. W. 737. According to the general trend of opinion, the mere facts of relationship and opportunity to exercise influence do not cast on the son the burden of proving that a will in his favor was not obtained by fraud or undue influence. Eastis v. Montgomery, 93 Ala. 293, 9 South. 311, following Bancroft v. Otis, 91 Ala. 279, 8 South. 286; Appeal of Dale, 57 Conn. 127, 17 Atl. 757; McFadin v. Catron, 120 Mo. 252, 25 S. W. 506; Berberet v. Berberet, 131 Mo. 399, 33 S. W. 61. And see Bundy v. McKnight, 48 Ind. 502; Blake v. Rourke, 74 Iowa, 519, 38 N. W. 392; In re Storer's Will, 28 Minn 9, 11, 8 N. W. 827. See note, 1 Prob. Rep. An. 117; note to In re Hess' Will (48 Minn. 504) 31 Am. St. Rep. 665, 670.

But, in connection with sufficient other circumstances, these facts may make out a prima facie case of undue influence, sufficient to cast upon the principal beneficiary the burden of establishing the validity of the will in this respect. Clarity v. Davis, 92 Minn. 60, 99 N. W. 363; Gay v. Gillilan, 92 Mo. 250, 5 S. W. 7; Simpler v. Lord, 28 Ga. 52. And see Disch v. Timm, 101 Wis. 179, and cases cited at page 191, 77 N. W. 196, at page 200. Cf. Cutler v. Cutler, 103 Wis. 258, 79 N. W. 240; note to Richmond's Appeal (59 Conn. 226) 21 Am. St. Rep. 85, 94 et seq.; Samson v. Samson, 67 Iowa, 253, 25 N. W. 233; Dale v. Dale, 38 N. J. Eq. 274. Among the specific circumstances involved in this case upon which the courts have laid stress are the facts that the son was the confidential agent of the father (Miller v. Miller, 187 Pa. St. 572, 41 Atl. 277); the condition of the natural objects of testator's bounty (Beaubien v. Cicotte, 12 Mich. 459); the sickness and bodily infirmity of testator (Myers v. Hauger, 98 Mo. 433, 11 S. W. 974); and the absence of other children (see Smith v. Henline, 4 Prob. Rep. An. 61, and cases cited at page 71, 174 Ill. 184, 51 N. E. 227). After careful examination of the record, and of the exhaustive briefs of counsel, and of many authorities, we are of opinion that the facts and circumstances shown by the record presented to us are not sufficient to shift the burden of proof upon the proponent.

The final question here to be determined, in the light of these circumstances and rules of law, is whether or not the trial court followed the proper practice in directing judgment for proponent notwithstanding the verdict of the jury. We are of the opinion that

it did not. While some, and perhaps many, American cases, have gone to unjustifiable lengths in depriving parties of their right of trial by jury in these as in other cases, the rule remains that within familiar and conventional restrictions the question of undue influence is for the jury. Prentis v. Bates, 93 Mich. 234, 53 N. W. 153; Baldwin v. Robinson, 93 Mich. 438, 53 N. W. 531; In re Shell's Estate, 28 Colo. 167, 63 Pac. 413. And see cases collected in plaintiffs' brief, and in 49 Cent. Dig. § 769, and see sections 745, 767. In Purdon v. Langford, Ir. R. 11 C. L. 267, 269, 275, 290, Lawson, J., said: "There is no instance in the books, so far as I am aware, and we have not been referred to any, in which the heir at law has been disinherited in a court of law save by a verdict of a jury establishing the will of his ancestor against him. * * * If there be evidence materially bearing upon the issue, the case should be left to the jury. * * * The cardinal maxim of our law, 'Ad questionem facti non respondent judices,' is not to be lightly violated. Every attempt to do so simply introduces confusion and uncertainty." And see Hampson v. Guy, 64 L. T. (N. S.) 778. The court "is not bound by one verdict, but for its better satisfaction may direct a new trial." Boyse v. Rossborough, 6 H. L. Cas. *2.

In Beyer v. Le Fevre, 186 U. S. 114, 22 Sup. Ct. 765, cited by respondent, Justice Brewer, at page 767, 22 Sup. Ct., after referring to the habitual rule of concurrence with the conclusions of the trial and appellate courts in such cases, says of a case in which the suspicious circumstances were "flimsy": "There has always been recognized the right and duty of this court to examine the record, and, if it finds that the conclusions are wholly unwarranted by the testimony, it will set the verdict or report aside and direct a re-examination." The common-law rule, accordingly, in cases of undue influence involving doubt was not to direct a judgment notwithstanding the verdict, but to allow a new trial or re-examination. See 49 Cent. Dig. § 773.

Recourse to that rule is the only one available in this state, unless it was altered by chapter 320, p. 729, Laws 1895. It is the settled interpretation of that act by this court that the legislature did not thereby create a new remedy. Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958. The moving party accordingly may have judgment notwithstanding the verdict only in cases where it is

clear upon the whole record that he is, as a matter of law, entitled to judgment on the merits. Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 617; Kreatz v. St. Cloud School Dist., 79 Minn. 14, 81 N. W. 533. The statute will not bear any other view consistent with the recognition of the constitutional right to trial by jury. Brown, J., in Baxter v. Covenant Mut. Life Assn., 81 Minn. 1, 83 N. W. 459. We are of opinion in this case that the testimony did not so conclusively fail to show undue influence as to justify the trial court in granting judgment notwithstanding the verdict. The order of the lower court is accordingly reversed, and the case remanded, with leave to the proponent and defendant to apply for a new trial.

Order appealed from reversed.