J. G. HENDERSON AND OTHERS, Appellants, v. BERTHA JACKSON AND OTHERS, Appellees.

**Wills:** OBJECTIONS TO PROBATE: DEMURRER: SUFFICIENCY. A demurrer to objections to the probate of a will on the grounds that contestants failed to allege unsoundness of mind, or undue influence in such a manner or degree as to give them any rights, and that the objections show on their face that they are bottomed upon the undue influence of the husband who died prior to the making of the. will, are sufficiently specific to raise the questions on which proponents rely.

**Wills:** UNDUE INFLUENCE: PLEADINGS. The single allegation that a testatrix, several years subsequent to the death of her husband, was influenced by his request and her promise to him in his lifetime to make a different disposition of her property than she otherwise would, is not sufficient to constitute undue influence or mental incapacity; but it may be considered with other circumstances fairly tending to show unsoundness of mind or undue influence.

**Same.** A will to be the product of undue influence must in essence and effect be the will of the party exercising the influence, and not that of the party executing it; and such influence must have been exercised at the time and over the very act of executing the instrument.

**Same:** MENTAL INCAPACITY. The statement that testatrix was laboring under the hallucination that the demand and promise to her husband was binding upon her, and that if she failed to observe them she would suffer his displeasure in the future, is insufficient to raise the issue of mental incapacity.

*Appeal from Cedar District Court.*— HON. B. H. MILLER, Judge.

TUESDAY, MAY 9, 1907.

REHEARING DENIED WEDNESDAY, DECEMBER 11, 1907.

THE opinion states the case.— *Affirmed.*

*J. G. France* and *I. J. Hamiel,* for appellants.

*Wright, Leach & Wright* and *C. O. Boling,* for appellees.

WEAVER, C. J.— Jane Powell, a resident of Cedar county, Iowa, died on June 20, 1905, leaving a writing which purported to be her last will and testament.    This instrument being offered for probate, the plaintiffs, who are heirs at law of the deceased, appeared and filed objections thereto.    This pleading is too long to be quoted entire, but the substance thereof is as follows:    That at the date of the will offered for probate, May 22, 1905, Jane Powell was the widow of one Benjamin Powell, who died on March 21, 1901; that prior to said last-named date the said Jane Powell at the instance and direction and under the influence of her said husband made and executed a will by terms of which she devised and bequeathed her entire estate to the heirs and relatives of the said Benjamin Powell, ignoring her own lawful heirs and blood relatives; that after the death of her husband the said Jane Powell executed the will now in controversy " for the purpose only of compensating those of her relatives who had cared for and nursed her during her last sickness and in consideration thereof, and that she desired to and would have revoked the provisions of the first will entirely and given her property to members of her own family if it had not been for the promise exacted of her by her husband when on his death bed to give the same to his heirs and relatives "; that under the " hallucination " that this promise was binding upon her, and her belief that she was powerless to change the will which he had dictated, and that " she would suffer the displeasure of her husband in the future " if she failed to carry out his wishes, she was induced to make the will offered for probate, and thereby dispose of her property to the exclusion of her own heirs, which she would not have done but for the undue influence

thus exercised over her. To this pleading the proponents demurred on the ground, stated in substance, that the matters therein stated, even if true, do not constitute undue influence over the testatrix, or tend to show want of testamentary capacity on her part at the date of the will. This demurrer was sustained, and contestants refusing to amend or further plead, the will was admitted to probate, and contestants appeal.

I.   It is first argued that the demurrer is too general, and should have been overruled as defective in form. It may be conceded that the demurrer is not as specific as it might

1. WILLS: objections to probate: demurrer: sufficiency.

have been, and yet we think it is not so general as to justify the court in overruling it on that ground. The second ground assigned is that " the contestants there named do not allege unsoundness of mind or undue influence in such a way or in such a degree as to give them any rights whatever." The third ground stated is that " the objections show on their face that they are bottomed upon undue influence of a husband who died some four years prior to the execution of the will." These propositions do, in our judgment, raise the specific points on which the proponents rely. The first and fourth grounds are very general, and if they alone were made the basis of the demurrer it should have been overruled.

II.   Reduced to briefer terms, the allegation of undue influence on which the contestants rely is simply this, that the testatrix, four years after the death of her husband, felt

2. WILLS: undue influence: pleadings.

herself bound by his request and by her promise made him in his lifetime and made a will disposing of her property in a different manner than she would have done had the alleged influence not existed. In our judgment, this falls very far short of the undue influence which in law is held to invalidate a will. The pleading cannot be fairly construed as an allegation that the testatrix was the subject of an overpowering insane delusion which possessed her mind and dominated her action in

making the will.    It depicts her rather as a person of super-
sensitive conscience, who conceived that she was bound to
carry out so far as possible the desire her husband had ex-
pressed and the promise she had made to him in his lifetime.
That she realized her right and her power to dispose of her
estate as she might wish is demonstrated by the statement em-
bodied in the pleading demurred to, that she did in fact re-
voke the old will which it is claimed was made under the un-
due influence of her husband and made another which, while
including some of the principal features of the first instru-
ment, did provide for legacies in considerable sums to her
own immediate relatives, including some of the contestants.
The fact that she did feel bound by the wishes of the deceased,
and sought to carry them out so far as she could consistently
with her own sense of justice to the relatives who had cared
for and nursed her in sickness, has no tendency to show that
in making the will she acted under moral or physical coercion,
or that the will as made was not her voluntary act and deed.
Just what is meant by the allegation of her fear that she
might " suffer the displeasure of her husband in the future "
is not clear, unless we may interpret it as a belief on her part
that she would meet her husband in the world to come, and
that her failure to show deference to his wishes here would
tend to mar the pleasure of their communion there.    But who
may assume to say that such an article of faith is the product
of a diseased mind, or that a person who acts upon it is the
subject of undue influence ?    If a devout person, being about
to prepare his will, makes it the subject of prayer, and be-
lieving that he has received divine help in planning the dis-
tribution of his estate, proceeds to act accordingly, would
any court sustain a verdict which finds in this fact alone a
ground for invalidating such will ?    There are many persons
whose soundness of mind and business sagacity none can
doubt, who believe in the possibility of communication with
disembodied spirits, and habitually take counsel from such
sources with reference to their conduct in life.    Is such a

person incapable of making a valid will, and should his will be set aside as the product of an insane delusion, or as having been executed under undue influence, simply because he believes his act to have the approval of the inhabitants of the spirit land? We think not. Few men live who have not some desire, hope, or belief with reference to a life to come and the continued conscious existence in some form of their departed friends, and such faith has always been and doubtless will always remain a potent factor in the lives and conduct of nearly every member of our race. The particular form of faith which one espouses may seem to another unreasonable, or unphilosophical, or even ridiculous, but it is not for the Legislature nor for the courts to judge between them, or brand the adherents of any particular belief as lunatics or incompetents.

It is true that if there be other circumstances fairly tending to show unsoundness of mind, or the exercise of undue control of one mind by another, all these peculiarities of life and conduct, religious or otherwise, will properly be a matter of inquiry, and may in some instances furnish legitimate support to a verdict or judgment against the validity of a will. But standing alone, we think no case can be found in which it has been held that such peculiarities of the testator are sufficient to impeach his testamentary capacity or to establish a charge of undue influence. For instance, it is held that a belief in witchcraft or in the visits of ghosts does not invalidate a will. *In re Vedder,* 6 Dem. Sur. 92; *In re Forman's Will,* 54 Barb. 274; *Van Guysling v. Van Kuren,* 35 N. Y. 70; *Addingham v. Wilson,* 5 Ind. 137 (61 Am. Dec. 81); *Kelly v. Miller,* 39 Miss. 19. Nor is it sufficient to show that the testator's imagination was generally controlled by his belief in witches, devils, and evil spirits which tormented him. *Lee v. Lee,* 4 McCord, 183 (17 Am. Dec. 722). Or that the testator was a firm believer in the transmigration of the souls of men after death into inferior animals, and that, influenced by such belief, left

his property for a society for the prevention of cruelty to animals. *Re Bonard's Will,* 16 Abb. Prac. (N. S.) 128. Or that his ordinary conduct was more or less influenced by spiritual beliefs and manifestations. *Thompson v. Thompson,* 21 Barb. 107; *Chafin's Will,* 32 Wis. 560; *Turner v. Hand,* 3 Wall, Jr., 88 (Fed. Cas. No. 14,257); *Otto v. Doty,* 61 Iowa, 23; *Lewis v. Arbuckle,* 85 Iowa, 335; *Middleditch v. Williams,* 45 N. J. Eq. 726 (17 Atl. 826, 4 L. R. A. 738); *Robinson v. Adams,* 62 Me. 369 (16 Am. Rep. 473); *Brown v. Ward,* 53 Md. 376 (36 Am. Rep. 422). In the last-cited case the testatrix consulted the spirit of her deceased brother, and in drawing her will acted in accordance with instructions believed by her to have been so received, and it was held not sufficient to defeat the will so made. Belief in future rewards and punishments is not a test of soundness of mind. *Gass v. Gass,* 3 Humph. 278. The belief by a testatrix that the spirit of her deceased husband is present with her is not an insane delusion which affects the validity of her will. *Church v. Crocker,* 7 Ohio Cir. Ct. R. 327. See, also, *Turner v. Rusk,* 53 Md. 65.

As already suggested, all these circumstances may be legitimate evidence to go to the court or jury in connection with other material facts, and the case thus made be one in which a conclusion adverse to the validity of the will can be sustained; but the pleading before us is barren of allegations other than those which go to the single fact that this testatrix believed herself bound to carry out the wishes of her deceased husband, and that if she failed to do so it would result in her unhappiness here or hereafter. This, we think, is not undue influence within the meaning of the law. The pleading nowhere charges undue influence in express terms. Such allegations would of course be unnecessary if facts were stated amounting to such influence, but they are not. To be "undue," the influence must have been such as to destroy the free agency of the testatrix, and make her the implement of her husband's craft, and

3. SAME.

make the instrument executed by her the will of her husband rather than her own. It must operate to destroy her free agency, not at some time in the past, but at the very time and in the very act of executing the instrument. Solicitations, however importunate, cannot of themselves constitute undue influence, for though these may have a restraining effect in that they persuade or induce the mind of the testatrix to consent to the thing asked for, they do not destroy her power to freely dispose of her estate. *Englert v. Englert,* 198 Pa. 326 (47 Atl. 940, 82 Am. St. Rep. 808).

The mere fact that the testatrix changed her mind, and at the request of her husband made a will which she would not have made but for his influence, is perfectly consistent with and may be regarded as an exercise of her free agency. To come within the ban of the law, the request and importunity of the husband must have gone to the point where argument and persuasion end and coercion, either physical or moral, begins, and the act of the testatrix must not have been a voluntary yielding to the request or demand of her husband, but a submission of her mind and will to his. In short, to be the product of undue influence, the will made must be in essence and effect the will of the party exercising it, rather than the will of the person executing it. See *Kaufman's Will,* 117 Cal. 288 (49 Pac. 192, 59 Am. St. Rep. 179); *Schmidt v. Schmidt,* 47 Minn. 451 (50 N. W. 598); *Gilbert v. Gilbert,* 22 Ala. 529 (58 Am. Dec. 268); *Thompson v. Kyner,* 65 Pa. 368; *Shell's Estate,* 28 Colo. 167 (63 Pac. 413, 53 L. R. A. 387, 89 Am. St. Rep. 181); *Eastis v. Montgomery,* 93 Ala. 293 (9 South, 311); *McIntire v. McConn,* 28 Iowa, 480; *Perkins v. Perkins,* 116 Iowa, 253.

Now the strongest allegations made by the contestant concerning the influence under which the will in controversy was executed are as follows: That testatrix desired to give her property to her own relatives, and " would have revoked her former will and bequeathed her prop-

erty to her own heirs if it had not been for her promise exacted of her by her husband on his death bed;" and "that the said Benjamin Powell exercised such influence over his wife as to wholly destroy her wish and desire in the disposition of her property." It hardly needs argument or illustration to make clear that an act prompted or controlled by a moral conviction of the binding obligation of a promise, even though as an abstract proposition others may be satisfied that no such obligation exists, is not an act induced by undue influence. A person who feels compelled to do a thing because it is right, or to refuse to do another thing because it is wrong, may be altogether mistaken as to the moral quality of the act, but the freedom of such person's will is not, in a legal sense, impaired in the slightest degree.

So, too, the allegation that the "wish and desire" of the testatrix to dispose of her estate to her own heirs were "wholly destroyed" means no more than that such inclination or purpose on her part ceased to exist. Such a state of facts is entirely consistent with her free agency, and the provisions of a written instrument by which those heirs were ignored was not necessarily against her will, but may have been in accordance with it. Her former desire to favor her relatives may have been removed, overcome or destroyed by her mistaken notion as to her obligation or duty to observe the wishes of her deceased husband, or even by unfair argument or persuasion, but so long as the will when made was her voluntary act it must stand. The pleading demurred to states no fact tending to overcome the legal presumption of the voluntary character of her act, and the ruling of the trial court sustaining the demurrer was therefore correct.

Counsel for appellant argue the question of the mental capacity of the testatrix, but we think the objections do not 4. SAME: .fairly raise that issue. While contestants mental incapacity. do, in a general way, speak of her "condition of mind" in explanation of the effect of the alleged undue

influence exercised by her husband, they nowhere say in substance or effect that she was of unsound mind. The nearest they approach such allegation is a statement that she was laboring under the hallucination and belief " that the demand of her husband was binding upon her, and that if she failed to observe she would suffer his displeasure in the future." Again, we have to say that notwithstanding the use of the word " hallucination " the allegation as a whole amounts to no more than a statement that she believed she was in duty bound to do as she did, and that she had some religious or superstitious fear that a failure to perform such duty would be unfavorable to her prospects of future happiness. This is neither unsoundness of mind as a matter of law, nor is in itself any evidence of such unsoundness.

For the reasons stated, the judgment appealed from is *affirmed.*