# MARY GRATTAN v. JOHN P. ROGERS.[1]

April 29, 1910.

Nos. 16,518—(39).

**Execution of Will — Undue Influence.**

In proceedings to contest a will, it is *held* the probate court properly found that the will was executed when the testator was mentally competent, and free from undue influence and restraint, and that it was entitled to probate.

[1] Reported in 126 N. W. 134.

The last will and testament of Patrick Rogers was allowed by the probate court of Wright County, against the objections of Mary Grattan. She appealed to the district court for that county where the issue of undue influence and mental incompetency of the testator were tried before Giddings, J., and a jury, but at the close of the evidence the court granted proponent's motion to take the case from the jury and to affirm the order of the probate court admitting the will to probate. Contestant's motion for a new trial was denied. From the order denying the motion, she appealed. Affirmed.

*J. H. Wendall* and *Woolley & Johnson,* for appellant.

*W. H. H. Pilgram, J. M. Casey,* and *J. T. Alley,* for respondents.

JAGGARD, J.

Testator died in January, 1909, aged eighty-seven, and a widower. He left surviving him two sons and two daughters. Appellant and contestant is the oldest, and respondent and proponent the youngest. Deceased made three wills—the first in 1898, the second in 1900, the last in 1902. Proponent was named as executor in the two last wills. The probate court allowed the will. An appeal was taken from its decree to the district court. The case was called, and was tried to the court and a jury. The issues concerned undue influence upon the testator and his mental incompetency. It did not appear that any written order had been made referring these questions of fact to the jury, or that any issues with respect thereto had been ordered to be framed or had been framed. At the close of contestant's case, proponent moved to withdraw all questions from the jury, on the ground that there was no evidence of incompetency and undue influence, and that if a verdict were rendered in favor of the contestant it could not stand as a matter of law, under the evidence submitted. The motion was denied, and then withdrawn. Proponent then presented his case. At the close of all testimony, proponent's motion was renewed, and granted. Thereupon the court found that deceased, at the time he executed his will, was mentally competent, and was free from undue influence and restraint. The order of the probate court, appealed from, was accordingly confirmed. Contestant moved for a new trial, the motion was denied, and this appeal was taken from the order denying the motion.

1. The first question presented by the record is whether the district court judge was justified by the record in withdrawing the case from the jury and in making his own findings of fact, instead of taking the verdict of the jury. It is clear that the contestant had no constitutional or statutory right to a trial jury. The matter of submitting such questions of fact to the jury rested in the discretion of the trial court. Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598. It is to be noted in this connection that in Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502, the trial court had exercised its discretion, submitted the case to a jury, and had taken its verdict. The majority of the court is of the opinion that there was no evidence whatever for a jury to consider; that, if a verdict had been rendered for the contestant, it must have been set aside; and that therefore the conclusion of the trial court was correct. A minority of the court, of which the writer is one, is of opinion that the trial court could in its discretion take the testimony with a jury present, and at the close of the trial in his discretion submit or refuse to submit the matter to the jury, and that no abuse of discretion appeared in this case. The conclusion that the ruling of the trial court must be affirmed follows from either view of practice.

2. On the merits of the testimony, all members of the court agree that the proponent was entitled to prevail. This case presents the familiar conflict of two opposing principles, namely, one that a man should be allowed to make his own will as the statute authorizes; the other that the cunning selfishness of a designing relative should not improperly prevent the even distribution of the testator's bounty between surviving members of his immediate family. In the case at bar, the contestant has stated fourteen particular circumstances to show undue influence. It would serve no useful purpose to discuss them in great detail. In a general way, they tended to show that at the time of the execution of the last will the testator was about eighty years of age and in failing health; that he lived in the same house with proponent, who in some measure controlled the farm and property; that proponent insisted, when the last will was drawn, his father should not visit his daughter, as "she wanted to keep father with her and get his confidence;" that other incidents

of the same character occurred; that proponent drank with his father, and urged the old man to drink more. There were other circumstances which, like those referred to, were suggestive; but nothing individually or collectively was cogent.

The situation of the other members of the family and the provisions made for them by the will did not render it unreasonable or obnoxious. The oldest son the father in a previous will had left only five dollars. It is evident that he was not cut off without premeditation. The influence which led to the distribution of the property as to him was evidently deliberate. The oldest daughter had married well. There was evidence that her husband owned three hundred twenty acres in the locality, which he had recently sold. The other daughter had property of her own, or in her family. At the time of the making of the will the farm was worth approximately $8,000. By its terms the father gave to each of his three children, other than proponent $1,000, which was to be paid at stated times out of the farm. He gave the farm, thus incumbered, to the proponent. The testator's condition was significant. He was a man of strong mind and stubborn nature. He lived seven years after the execution of the will. That, as his strength gradually failed, his mind weakened is clear. But during the period of making the will his condition fully justified the court in finding him competent. That his firmness of mind remained is witnessed by many circumstances, as an interview with the priest at which the gift of some of the property to children other than the proponent was urged and denied.

We conclude that the trial judge was not in error in denying contestant's motion for a new trial on the ground that the verdict was not justified by the evidence.

3. Contestant moved for a new trial on the ground of newly discovered evidence. We have examined the proposed testimony. The matter, of course, lay in the discretion of the trial court. We find nothing which would justify us in holding that its discretion had been abused.

Affirmed.