## BENJAMIN F. LEWIS AND OTHERS v. WALTER N. MURRAY AND ANOTHER.[1]

### December 17, 1915.

### Nos. 19,543—(153).

**Will — issues of capacity of testator and undue influence — trial by jury.**

1. On an appeal from the probate court to the district court from the allowance of a will, the parties have no constitutional right nor statutory right to a trial by jury of the issues of testamentary capacity or undue influence.

**Same.**

2. Whether such issues shall be submitted to a jury is within the discretion of the trial court.

**Same — withdrawal from jury.**

3. After issues are framed and after their submission to the jury and before the return of findings the court may, in the exercise of a sound discretion, withdraw them and itself make findings.

**Same.**

4. In doing so in this case the court was within the exercise of a sound discretion, though there was evidence of a lack of testamentary

[1] Reported in 155 N. W. 392.

---

Note.—As to withdrawal of juror, see note in 48 L.R.A. 432.

As to what constitutes testamentary capacity, or incapacity, see notes in 27 L.R.A.(N.S.) 2; and L.R.A. 1915A, 443.

capacity, and though one of the grounds of the motion to withdraw the issues was that there was no such evidence, and though the court would not have been justified in directing a verdict upon such issue.

**Findings sustained by evidence.**

    5. The evidence justifies the finding of the court that the testatrix was of testamentary capacity and that the will was not the result of undue influence.

When Walter N. Murray and Henry Staples presented to the probate court for Hennepin county the last will and testament of Sarah J. Hudson, deceased, Benjamin F. Lewis, Harriett M. Downs, Clara D. Wheeler, Ella Mead, Fred Lewis and Phila Downs, claiming to be the heirs of testator, filed objections to the allowance of the will. From the order of the court admitting the will to probate, contestants appealed to the district court for that county. The appeal was heard before Jelley, J., and a jury to which were submitted the questions: (1) Whether decedent was of sound mind so as to be competent to make a will, and (2) whether the will in controversy was procured by the exercise of undue influence. After having been out 49 hours without being able to agree, the jury was discharged. The court made findings and sustained the order of the probate court. Contestants' motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, contestants appealed. Affirmed.

    *G. Halvorson* and *James A. Peterson,* for appellants.

    *Cohen, Atwater & Shaw,* for respondents.

DIBELL, C.

Appeal from a judgment of the district court of Hennepin county affirming an order of the probate court admitting to probate the will of Sarah J. Hudson.

The court, on the motion of the contestants, appellants here, framed issues relative to testamentary capacity and undue influence. The case was tried and submitted to a jury. After it had deliberated long without reaching a result the court, on the motion of the proponents of the will, the respondents here, discharged it; and, after giving opportunity for adducing further evidence, made findings in favor of the proponents pursuant to which judgment was entered. The appellants urge, among

other things, that the court was in error in withdrawing the issues from the jury and itself making findings.

1. There is no constitutional nor statutory right to a trial by jury in a contest of a will upon the ground of lack of testamentary capacity or upon the ground of undue influence. Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598. In the case cited both the constitutional and the statutory right to a jury trial were the subject of thorough consideration and the result stated was reached. A statement of like effect is made in Grattan v. Rogers, 110 Minn. 493, 126 N. W. 134. The case of Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502, is not to the contrary. The statement in the opinion that "the question of undue influence is for the jury" and the statement in the syllabus that "the question of undue influence is one of fact for trial by a jury," were made in review of an order granting a motion for judgment notwithstanding the verdict of a jury to which the issue had been submitted, and it had reference to the propriety of the granting of such motion. It was not held that there is a constitutional or statutory right to a jury trial of such an issue. Indeed such a question was not before the court. The language of the opinion, considered in the connection in which it was used, is not misleading. The provision of the probate code relative to the submission of issues, which had consideration in Schmidt v. Schmidt, *supra*, is mentioned in the paragraph which follows.

2. Whether issues shall be submitted to the jury is within the discretion of the trial court. See Schmidt v. Schmidt, supra, where the court denied a motion to submit. The probate code provides that all except certain enumerated appeals shall be tried by the court without a jury "unless the court orders the whole issue or some specific question of fact involved therein to be tried by jury or referred." R. L. 1905, § 3878 (G. S. 1913, § 7496). The statute relative to the trial of issues of fact in court cases provides: "All other issues of fact shall be tried by the court, subject to the right of the parties to consent, or of the court to order, that the whole issue, or any specific question of fact involved therein, be tried by a jury or referred." R. L. 1905, § 4164 (G. S. 1913, § 7792). Under this statute, which is substantially in the language of the probate code, it is held uniformly that, when the issues are suitable for submission, it is within the discretion of the

court to submit them or to refuse to submit them.    3 Dunnell. Minn. Dig., § 9838, and cases cited.

3. After the jury had deliberated something like 24 hours it returned into court and upon its request received additional instructions, and some of the instructions before given it were read, and some of the testimony was read.    It again retired and so far as the record shows nothing was heard from it until called into court.    At 5:30 o'clock in the afternoon of the third day, and after the jury had deliberated something like 49 hours, counsel for both parties were in court, and counsel for the proponents moved the court that it withdraw all questions from the jury and make its own findings, instead of taking the verdict of the jury, upon these grounds:

"(a) That there is no evidence warranting the jury in finding in favor of the contestants on any of the three questions.

"(b) That if a verdict were rendered in favor of the contestants on any of said three questions, such verdict could not stand as a matter of law and must be set aside.

"(c) That it was within the discretion of the court on the trial of this case to take the testimony with a jury present, and at the close of the trial submit or refuse to submit the questions to the jury, or, after submitting, withdraw the questions from the jury before verdict and make its own findings of fact."

The court announced that the motion would be granted and called in the jury.    Upon inquiry it appeared that it had not agreed and after some few remarks it was discharged.    The court then stated that it would make its own findings instead of taking a verdict, and that both parties would have an opportunity to offer further evidence, and such opportunity was given them.

The question is directly presented whether the trial court, after issues are framed, and after the evidence is introduced, and after the jury has retired, but before it has agreed upon a verdict, has the power, in the exercise of its discretion, to withdraw the issues and discharge the jury and itself make findings.    We are of the opinion that it has.

In Smith v. Barclay, 54 Minn. 47, 55 N. W. 827, the issue was as to the ownership of moneys in the hands of a garnishee.    A jury was impanelled for the trial of "special issues only," though none were then

framed. At the close of the testimony the court refused to submit issues and itself made findings. On appeal this court held that if there was a right to trial by jury, a question not decided, it had been waived; and it made this remark which was material to the result reached, though it did not refer to it in its syllabus:

"It can hardly be necessary to add that, if the case was triable by the court, if, from the developments on the trial, the judge changed his mind, and concluded that it was inexpedient to submit any specific questions to a jury, there was no error in discharging the jury and trying the case himself."

In Grattan v. Rogers, 110 Minn. 493, 126 N. W. 134, a will contest, the question was whether the trial judge was justified in withdrawing the case from the jury and making its own findings of fact instead of taking the verdict of the jury. There the motion was made at the close of the case, on the ground that there was no evidence of incompetency and undue influence, and it was granted. The majority of the court were of the opinion that there was no evidence for a jury. That opinion was determinative of the appeal. This statement was made:

"A minority of the court, of which the writer is one, is of opinion that the trial court could in its discretion take the testimony with a jury present, and at the close of the trial in his discretion submit or refuse to submit the matter to the jury, and that no abuse of discretion appeared in this case. The conclusion that the ruling of the trial court must be affirmed follows from either view of practice."

The quotation is cited by counsel as an implication of a majority view to the contrary. It does not seem necessary to be so; but, however it may be, we are of the opinion that at any time before verdict the court may, in the exercise of a sound discretion, withdraw the issues and discharge the jury and itself try the case and make findings. If the jury had disagreed and had been discharged the court might, in its discretion, have refused to submit the issues to a second jury. Shapira v. D'Arcy, 180 Mass. 377, 62 N. E. 412; Keithley v. Keithley, 85 Mo. 217; Farmer v. Stillwater Water Co. 108 Minn. 41, 121 N. W. 418. It is true that, if the jury had found upon the questions submitted, the finding would have been binding upon the trial court unless set aside for cause. Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322, and cases

cited; heider v. Walz, 93 Minn. 399, 101 N. W. 601, and cases cited. Still the court could have refused to submit issues in the first instance; and we think in a proper case and, in the exercise of a sound discretion, it may withdraw them after their presentation to the jury and before verdict, and itself make findings upon them.

4. The situation shown by the record is such as to justify the court's action. Many of the facts bearing upon the propriety of its action are recited in the preceding paragraph. The jury had been out 49 hours. After 24 hours' deliberation it had asked and received further instructions and parts of the testimony were read to it. Still it did not agree. Its deliberations were likely to be resultless. The trial was a long one and expensive and a second one would be long and expensive. It was necessary that a result be reached sometime. The issues were such as courts are competent to try, and such as they do try from day to day without more than the usual trouble in reaching the truth.

The only embarrassment that comes in reaching the conclusion announced arises because of the first two grounds of the motion. The record shows that the motion was granted, and the findings recite that it was granted on all three grounds. The motion was not to direct the jury to find a specified way upon the issues. Such a motion could not have been granted, for there was some evidence of lack af testamentary capacity. There was none of undue influence sufficient to support an affirmative finding. Bearing in mind that the contestants had no constitutional nor statutory right to have these issues submitted to a jury, we think the court's order withdrawing them was not erroneous, even though one of the grounds of the motion was not alone such as to justify its action. Though it assumed that there was no evidence to go to the jury upon the question of testamentary capacity, when it granted the motion, it was within its discretion to withdraw the issues.

5. The findings that testatrix was of sound and disposing mind and that no undue influence affected the will are supported by the evidence. It would be difficult and perhaps impossible to support findings to the contrary.

Testatrix was an elderly lady some 76 years old in 1912, when the will was made. She lived on Nicollet avenue near Twelfth street, in the city of Minneapolis, in a modest house and in humble circumstances.

The house had been her home for 30 years. It had been the home of her husband, who had died some 20 years before, and of her deceased and only son, who had died some 10 or 12 years before, to whom she was devoted and for whom she mourned greatly; and, because of the associations connected with her home, she was unwilling to leave it, though its value was such that, if properly invested, its income would have given her more than comfortable support. Her son left her corporation stock worth a few thousand dollars, which was income bearing for a part of the time at least, and through the receipt of dividends and by selling parts of it from time to time and by taking roomers she paid taxes on her home and supported herself. Her heirs were a brother and sister and the children of two deceased brothers. Her will was made a year and a half prior to her death. She made small bequests to her relatives, to her sisters $200; to a brother $100; to a niece $100; to a sister-in-law and her children $200; to a nephew $500; a bequest of $500 to a church in New York which her father's family had attended; another of $500 to the First Presbyterian Church of Minneapolis; another $1,000 to the Northwestern Hospital, and another of $1,000 to the Jones-Harrison Home for the Aged Women; and after providing for an expensive family monument, costing from $5,000 to $6,000, the residue was left to the First Presbyterian Church, with which she had affiliated for 40 years or more, and to the Jones-Harrison Home in which she had been interested for 20 years or more and of which she was a director. In her 1903 will the residue was bequeathed her brothers and sisters living at her death. She made bequests to her church and the home; and, after the erection of the expensive monument for which provision was made, it was contemplated that the residuary estate would be small. Her estate increased in value and at the time of her death was worth something like $30,000 or $40,000. Her association with her relatives does not seem to have been frequent or intimate except with Dr. Murray, a nephew, with whom she advised, though there was no lack of friendliness between them. She did not regard their claims to her bounty as pressing or as demaning substantial recognition. She had, from the time of her first will in 1903, determined not to give them much; and it may properly be said that they had not themselves sought recognition in her will.

From the beginning she was possessed with the idea that she would use most of her property in the erection of a monument in commemoration of her husband and her son—perhaps more particularly the latter— and leave substantially nothing to her relatives, one of her reasons being that such property as she had came from her husband and her son and should be used to perpetuate their memories, and another, applicable to some at least, was that through immediate relatives their comfort was sufficiently assured. In 1903 her will provided for a monument to cost $15,000 or $16,000. The codicil in 1905 increased it to $16,000 or $17,000. Dr. Murray, a nephew with whom she counselled, advised her against erecting so expensive a monument. The same is true of her lawyer and perhaps others. Anyone in a position to counsel her, acting sensibly, would have advised a less expensive monument. It had been suggested to her by one or more that a gift to the home, or to the hospital, or perhaps to other institutions, would be a better memorial than so expensive a piece of granite in Lakewood. When her last will was made she decreased the amount to be expended in a monument to $5,000 or $6,000 but declined to make it less.

The testatrix was aged and feeble. She had the infirmities and weaknesses and peculiarities natural to old age. She was not mentally or physically so active in her later years and was declining. She did not see well, her memory was not good, and she probably was flighty at times and perhaps without clear comprehension and doubtless her mind wandered. She had no business experience. She lived alone without very intimate friends, in a narrow circle, and was lonely.

The women of her church took an interest in her for many years, and this interest the contestants claim was selfish. The women in charge of the Jones-Harrison home took an interest in her. The contestants claim that this was with the notion of finally getting her property for the home. She was put upon the board of directors and continued thereon for many years when her services could not have been of valuable use. Dr. Murray, her nephew, looked after her affairs to a considerable extent and she relied upon him. The evidence of undue influence does not arise to the dignity of proof justifying a finding invalidating the will.

The will was drawn by the counsel of the testatrix, who had been her personal adviser for many years. He testified. The court might well enough have accepted his testimony, not only as credible in its entirety, but as giving the most accurate information of her mental condition—information of the highest value to the court in reaching its finding upon the question of her testamentary capacity; and doing this it could readily have concluded that in no particular was she lacking. Indeed, it is difficult to see how another finding could have well been made. In Schmidt v. Schmidt, *supra*, this definition is given of undue influence:

"Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator."

The same case gives this test of testamentary capacity:

"The test as to what constitutes a sound and disposing mind is that the testator shall understand the nature of the act and its effect; that is, shall understand the extent of the property of which he is disposing, and be able to comprehend and appreciate the claims of others upon his bounty to which he ought to give effect. Soundness of mind, such as will enable a person to make a will, has relation to the business to be transacted, viz., the disposition of his property. He must be able to understand and carry in his mind in a general way the nature and situation of his property, and his relations to those who would naturally have some claim to his remembrance."

See in re Nelson's Will, 39 Minn. 204, 39 N. W. 143; Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; Hammond v. Dike, 42 Minn. 273, 44 N. W. 61, 18 Am. St. 503.

Applying these tests to the evidence there should be no question of undue influence. Neither is there a serious question of testamentary capacity. The testatrix had in mind her property and those who might have some natural claims to her bounty. She knew what she wanted to do with her property and insisted upon doing it. In the matter of the monument she was insistent to the point of obstinacy.

We have carefully considered all of the testimony offered by contestants. In general it consists of testimony of witnesses familiar with

the deceased and her ways of life, who testified to many peculiarities and gave their opinion that she was not of mental capacity to make a will. Their opinions reflected their judgment of the will. They thought she should have remembered her relatives more substantially. The evidence quite clearly shows that the testatrix knew the will she wanted and made it.

We have examined the rulings on evidence of which complaint is made. We find no substantial or prejudicial error.

Judgment affirmed.