OTTO KALLUSCH v. ALBERT C. KAVLI AND OTHERS.[1]

December 18, 1931.

No. 28,478.

¹Reported in 240 N. W. 108.

4

*Smith, Callahan & Carlson* and *Arthur E. Olson*, for appellant.

*Joss & Parker*, for respondent Marguerete F. Hauser.

*Kelly, Thomas, Morck & Dillon* and *A. Enkema*, for respondent Albert C. Kavli.

WILSON, C. J.

Plaintiff appealed from an order denying his motion for a new trial. The word plaintiff as hereinafter used will have reference to plaintiff's decedent, Charles Keough.

The action sounds in rescission. Plaintiff was a widower about 68 years old with limited education and business experience. He became a boarder in the home of defendant Marguerete F. Hauser, a widow. She lived in the upper apartment of a duplex in which she owned an equity and which will be herein referred to as her property. Plaintiff owned a residence in Minneapolis of the agreed value of $5,000. He also owned Cities Service stock of the market value of $4,650.

Defendant Kavli owned a summer resort known as Pequot Shady Shore Lodge on Lake Sibley, the headwater of the Gull Lake chain. It contained about six acres of land with ten cottages 20 x 22, a lodge building, a log house, a log store, ice house, pavilion, a dock and a stairway, and a smaller dock and boats. Electric light is available. The resort adjoins the village of Pequot and is in the vicinity of summer homes.

Plaintiff and defendant Hauser, after a personal inspection and examination of the property, made a contract with defendant Kavli wherein they bought his summer resort at a price of $22,500. Plaintiff turned in his residence property at $5,000 and his Cities Service stock at $4,650. Defendant Hauser turned in her property at $2,600. The balance of $10,250 was to be paid in semi-annual instalments of $500.

Plaintiff and defendant Hauser took possession of the resort and attempted to operate it. Trouble arose between them. Plaintiff then instituted this action, claiming a conspiracy to defraud him and alleging misrepresentations to the effect that the value of the resort was $25,000; that its net annual income exceeded $5,000; that it had been operated to capacity and that with defendant Hauser's ability to manage a larger net annual income would be realized; that it was necessary to close the deal at once or a sale would be made to Iowa parties; and that plaintiff must not talk to or consult an attorney.

The contract was prepared by a layman and not a lawyer. It was so drafted that plaintiff would receive a one-half interest in the property purchased and defendant Hauser would receive a one-half interest therein though plaintiff had contributed $9,650 and defendant Hauser $2,600. This is alleged to have been done as a part of the alleged conspiracy. Defendant Hauser in her answer disclaims such interest in the property but claims only such a proportionate interest as $2,600 bears to the $12,250 paid thereon and that plaintiff's acquired interest was in such proportion as $9,650 bears to said $12,250. The court sustained her claim and also found against plaintiff on the merits of his claim of conspiracy and fraud.

■ The court's finding that there was no conspiracy to defraud is sustained by the evidence.

■ In the absence of conspiracy, the record fails to support any claim that plaintiff and defendants were not dealing at arm's length. Indeed plaintiff and defendant Hauser then stood together, and defendant Kavli stood as the other party. It may be that plaintiff placed great confidence in defendant Hauser and relied much upon her judgment, which was little better than his own. It is suggested in the record that plaintiff wished Mrs. Hauser to marry him and that she refused. It may be inferred from the circumstances disclosed by the record that the plaintiff, in any event, when this deal was closed, expected or hoped that such marriage would follow. But the friendship between these two in no way reaches defendant Kavli. Defendant Hauser did not get the property of which plain-

tiff has been deprived.  Indeed, if he has lost his property, as he probably has, it is equally true that Mrs. Hauser has also lost her property.  It is argued that plaintiff had a right to rely upon the statements made as to the value of the resort.  But it must be kept in mind that Kavli had a right to and did deal with the plaintiff at arm's length, and in that particular the case is distinguished from Adan v. Steinbrecher, 116 Minn. 174, 133 N. W. 477; Voss v. Scott, 180 Minn. 88, 230 N. W. 262; Hassman v. First State Bank, 183 Minn. 453, 236 N. W. 921.  This case is controlled by the rule of Follingstad v. Syverson, 166 Minn. 457, 208 N. W. 200; State v. Sack, 179 Minn. 502, 229 N. W. 801; Sacramento S. F. L. Co. v. Melin (C. C. A.) 36 F. (2d) 907.  The court's finding that a fraudulent representation as to value was not made and that the statements relative to value were mere trade talk is sustained by the evidence.  The court did not act under any misapprehension as to the law applicable.

The court's findings of fact are also sustained by the evidence, and in the absence of errors occurring at the trial the plaintiff cannot prevail.

As one of the conclusions of law the court reformed the contract as between plaintiff and defendant Hauser for the purpose of showing the real interest of the individual vendees therein, to-wit:

"That the said Charles Keough has, and the contract will read, an undivided 9650/12250 interest therein, and the defendant Marguerete F. Hauser has and shall have an undivided 2600/12250 interest therein."

This is assigned as error.

The court found as a fact that Mrs. Hauser contributed her property at a valuation of $2,600.  The record supports the conclusion that all the parties to the transaction agreed thereto.  This includes plaintiff.  Mrs. Hauser testified that she had that much in it.  The trial court expressed his opinion in the memorandum that her equity was in the value of about $1,100 instead of $2,600.  Hence this assignment of error.  The claim is that her fractional interest

in the contract is in fact less than half she has given. We are asked to direct a correction.

We entertain grave doubt as to the particular point being presented to the attention of the trial court. But we will assume that it was. The complaint sought no such relief. Perhaps this relief is now sought under the prayer "for such other and further relief as to the court seems just and equitable." The complaint does not predicate fraud upon Mrs. Hauser's representation to the plaintiff of the value of her property. It does charge that her property was not of a greater value than $1,600 and that an excessive value was placed thereon to defraud plaintiff. But such general claim is not established by the findings of fact, which commit plaintiff to having agreed to such value without the intervention of fraud. The transaction being stripped of the charge of fraud, it is the result of plaintiff's voluntary conduct. It follows that the court was justified in leaving the parties just where they all put themselves by their own contract.

■ A physician specializing in diseases of the eye and ear was called as a witness and testified that he had examined plaintiff for hearing only. He found plaintiff's hearing about one-third deficient and that he was suffering with "nervous deafness," which means that the aural nerve was affected. This results from a lack of blood supply, and he testified that it was an incident of old age. The impaired hearing was the only abnormality that the doctor found.

Upon redirect examination plaintiff's counsel asked the witness if he observed any symptoms of senility. The court sustained the objection as immaterial. This is now assigned as error. The question was repetition. "Senility" means the quality of being senile, an infirmity of old age, trouble proceeding from old age. That was exactly what the witness had already stated. There was no occasion to repeat. This occurred near the end of a nine-day trial. We are of the opinion that the ruling was without error, and in any event we think it was without prejudice.

■ Plaintiff made an offer to prove that while Mrs. Hauser and plaintiff were operating the resort Mrs. Hauser had said the plain-

8

tiff was crazy or foolish. This was hearsay as to defendant Kavli, and it was irrelevant under the pleadings in the proof of fraud as to both defendants. Plaintiff's counsel stated that he did not contend that there was or would be any proof that plaintiff was crazy in the ordinary adaptation of that word, but contended that the term was used in the sense of his being foolish. But in that event it had no tendency to establish fraud, which was the gist of the action. We think the offer was properly rejected.

Affirmed.

