FRANCES M. HAFNER v. EUGENE F. SCHMITZ.[1]

May 21, 1943.

No. 33,349.

[1]Reported in 9 N. W. (2d) 713.

*Albert J. Mueller,* for appellant.
*Carl W. Cummins* and *A. I. Levin,* for respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Emma R. Schmitz, a resident of St. Paul, died intestate August 20, 1940, and left surviving her a daughter, Frances M. Hafner, plaintiff in this action, and a son, Eugene F. Schmitz, defendant, as her only heirs and next of kin. Frances brings this suit as administratrix of her mother's estate to set aside certain conveyances from the mother to defendant and for an accounting of moneys collected by defendant as income from, and proceeds of the sale of, property owned by decedent. There are 15 separate causes of action, each predicated upon incompetency of decedent, undue influence by defendant, lack of consideration, and insufficient delivery. The trial court found that defendant exercised undue influence over his mother in obtaining the property here involved and that there was no consideration therefor and no de-

livery of the instruments purporting to effect the transfers. Judgment was ordered setting aside the various conveyances and awarding plaintiff the moneys found to be due her. Defendant appeals from an order denying his motion for new trial.

Mrs. Schmitz during her lifetime owned considerable property, consisting mostly of mortgages and realty, which she had inherited from her parents and some of which she became possessed upon her husband's death in 1916.

Both son and daughter lived in the family homestead prior to their father's death and continued to do so for many years thereafter. Plaintiff was married, and she and her husband and two daughters occupied the upstairs, maintaining a more or less separate household until 1931, when they moved away. The evidence shows that the health of one of the daughters required them to move to the country. Defendant lived with his mother in the downstairs portion of the house and has continued to occupy it since her demise. After the Hafners moved in 1931, the upstairs was rented out from time to time to various tenants. The Hafners did not pay rent while they occupied the upstairs, nor did defendant pay his mother for board and room during these many years.

The evidence shows that Mrs. Schmitz was an intelligent woman although not very well educated or experienced in business matters. At no time did she take complete charge of her own financial affairs, but always had someone's advice and help. From and after her husband's death in 1916, she engaged the counsel and advice of the late William T. McMurran, an attorney, until the time of his death. Thereafter she was advised by attorney John McMurran, a son of William T., until he moved to California in 1936. Since 1936 her only adviser and confidant in connection with her business affairs was defendant. He had a better education than his mother and much more business experience. At the time of trial he was 45 years old and had never been married.

At the time of her death Mrs. Schmitz was 82 years old. For several years prior thereto she had been in failing health, suffer-

ing from high blood pressure and bladder trouble. During her later years she had two accidents, one a fall on the sidewalk and the other an automobile accident. Both contributed to the general weakening of her health. From about 1935 or 1936 her physical frailty became very noticeable. She lost weight and was required to be in bed much of the time.

Prior to 1931 defendant had been employed by the Great Northern Railway, for several years in its store department and after 1923 in its accounting department. Since 1931 defendant has not been employed at steady work. He testified that attendance upon his mother's affairs, collecting rents and interest, paying taxes on the various properties, looking after repairs, and caring for his mother prevented his engaging in steady work. He kept a record book of the income and expenses in connection with the leased properties. He also kept a separate record of each mortgage and the interest payments made on each until satisfied or foreclosed. He deposited moneys collected in a joint bank account kept in his and his mother's names. Important papers were kept in a jointly leased safety deposit box.

In July 1936 defendant obtained assignments of several mortgages from his mother. He testified that these assignments were voluntary on her part, that she wished to transfer the properties to him because of the work he had necessarily done in caring for her and for her business affairs. It is admitted that he engaged an attorney of his own choosing (not Mr. Mueller, the attorney of record in this case), to draw the instruments. There was testimony on behalf of plaintiff that the attorney called at the Schmitz home on July 22 to have them executed; that Mrs. Schmitz refused to sign them because no provision was made in any of them for her daughter, whereupon the attorney departed and defendant became angry; that defendant argued and haggled with his mother so that on the next day, the 23d, the attorney returned, Mrs. Schmitz got out of bed, went to the writing desk, signed the instruments, and then returned to her bed. The instruments clearly show "July," followed by the number "22" typed in, over which is

written in ink the number "23." Defendant's evidence explains the confusion of the dates in another way. The question was clearly one of fact, properly determinable by the authorized trier of facts.

There is evidence that sometime in 1936 defendant asked his sister, Mrs. Hafner, whether they should not agree upon a division of their mother's property and thus avoid the necessity of having her estate probated. He took her out to see some of the parcels of land owned by the mother. Before any agreement was reached, plaintiff discovered that defendant had recorded various assignments of mortgages to himself. Upon discovering these she complained to defendant. He thereupon reassigned them to his mother. Some of these were thereafter satisfied, the moneys deposited in his and his mother's joint bank account, and then withdrawn by checks in defendant's handwriting but signed by his mother, and deposited to his own bank account.

Much evidence was introduced showing a pleasant relationship existing between the Hafners and Mrs. Schmitz during the time they lived in her house and at all times thereafter. There was also an abundance of evidence to show that deceased exhibited a feeling of fear toward her son; that she was much more friendly and disposed to chat when he was absent; and that she was furtive and quiet and "shushed" everybody when he approached.

The findings of the trial court disposed of the issue of incompetency favorably to defendant's contentions. The only question before us is whether the evidence sustains the findings of undue influence, no consideration, and no delivery.

■ This court has had many occasions to apply the rules governing cases involving the matter of undue influence. Claggett v. Claggett, 204 Minn. 568, 284 N. W. 363; In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90; Shaughnessy v. Shaughnessy, 135 Minn. 262, 160 N. W. 769. One of these rules is that where "confidential relations exist between parties and one of them by means of the relation secures from the other an inequitable advantage, equity will set aside the transaction." Claggett v. Claggett, *supra,*

at 204 Minn. p. 572, 284 N. W. p. 365; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287. The influence must be such that it overcomes the volition of the person influenced. And the burden of proof is upon the party asserting it. Naeseth v. Hommedal, *supra;* 1 Page, Wills (Lifetime ed.) § 185. Unless the evidence is conclusive one way or the other, the question is one of fact and, like any other question of fact, is for the jury or trial court. In re Estate of Stephens, *supra;* Schultz v. Brennan, 195 Minn. 301, 262 N. W. 877; Woodville v. Morrill, 130 Minn. 92, 153 N. W. 131.

In the instant case the facts hereinabove recited show a confidential relationship; they show an opportunity for the one to take advantage of the other; and an inclination to do so, clearly evidenced by previous attempts. These, together with the result here attained, are sufficient to warrant a finding of undue influence. In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90, *supra.*

■ Defendant insists that there was consideration for the various conveyances and assignments to him. He cites his forbearance from employment and marriage as part of that consideration, and also his work and labor connected with managing the properties and caring for his mother. Forbearance to marry as consideration for a contract is of somewhat dubious legality. See Appleby v. Appleby, 100 Minn. 408, 419, 111 N. W. 305, 10 L.R.A.(N.S.) 590, 117 A. S. R. 709, 10 Ann. Cas. 563; 35 Am. Jur., Marriage, p. 347, § 248, *et seq.* Forbearance from work as a contractual consideration is indeed novel. In the instant case the evidence is conflicting whether defendant maintained either status out of regard for his mother, and practically nil that he did so in return for, or in consideration of, the several transfers of property here involved. Plaintiff's evidence tended to show that Mrs. Schmitz had frequently expressed the wish that her son would marry and that he would find steady employment. The evidence certainly did not require a finding contrary to that made by the trial court. Consistent with the finding heretofore discussed, that defendant's acts and conduct constituted undue influence, the conclusion that his

work in dealing with his mother's property was not performed in consideration of her various transfers to him, but for the purpose of usurping control of her properties to the exclusion of his sister, necessarily follows and is sustained by the evidence.

The trial court found as a fact that there was no delivery of the instruments here involved. In view of the result necessarily flowing from our disposition of the first point hereinabove set forth, further discussion is unnecessary. However, a brief mention of some of the evidence which goes to describe defendant's whole course of procedure may be advisable. He testified that after his mother signed the instruments dated July 23, 1936, she left them on the table, and he took them and put them into an iron box to which they both had equal access. Other purported instruments of transfer were put in their joint safety deposit box. Defendant did not record any of the instruments until the day after his mother's death, except those heretofore mentioned which he reassigned to his mother upon plaintiff's objection. Asked why he did not record them, defendant testified that he wanted to keep them handy so that his mother could change her mind about them "with his consent." At the hearing in probate court defendant did not add that he considered his consent necessary to enable his mother to make some other disposition of the properties purportedly assigned or transferred. Clearly, his testimony, both in the probate court and in the district court, indicated that at the time he took the instruments he believed that his mother still retained some, if not all, of her interest in the properties. He considered the transactions to be mere revocable gifts, which his mother could recall at any time.

The evidence is abundant that deceased was dependent upon her son, that he was in complete control of her property and of her disposition of it, that he acted quietly and in subterfuge to deprive his sister of her inheritable share. Each of the challenged findings of the trial court is amply sustained by the evidence.

The order is affirmed.