JOHN G. O'ROURKE, GENERAL ADMINISTRATOR OF
ESTATE OF MINNIE O'ROURKE, v.
EDWARD P. O'ROURKE.

167 N. W. (2d) 733.

May 2, 1969—No. 40982.

*LeVander, Gillen, Miller & Magnuson* and *Paul Magnuson,* for appellant.

*Grannis & Grannis, David L. Grannis, Jr.,* and *Patrick A. Farrell,* for respondent.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

Otis, Justice.[1]

This is an action by the administrator of the estate of Minnie O'Rourke to recover certificates of deposit representing the proceeds of bank accounts decedent jointly held with defendant during her lifetime. The beneficiaries of the estate are defendant and two other sons of decedent. The jury found that defendant procured the joint accounts by means of undue influence. The trial court initially adopted the jury's findings. Thereafter the court granted defendant judgment notwithstanding the verdict with the provision that if the judgment was reversed defendant was to have a new trial. The only issue on appeal is whether the evidence is conclusive against the verdict. Rosin v. International Harvester Co. 262 Minn. 445, 454, 115 N. W. (2d) 50, 56. We hold that it is not. The jury's verdict is therefore reinstated without a new trial.

Decedent, Minnie O'Rourke, was a widow whose husband died in 1924, leaving two sons, John and Joseph, surviving. Edward is Mrs. O'Rourke's son by a different father. The death of decedent's husband resulted in decedent's receiving workmen's compensation benefits in the amount of $7,500, with which she purchased a home. From 1942 until 1959, Mrs. O'Rourke was employed by Swift & Company. She was a thrifty woman and accumulated a substantial amount in savings accounts and bonds prior to her retirement.

The first transaction which gave rise to this litigation occurred on January 27, 1961. On that date, Mrs. O'Rourke accompanied by Edward went to the Drovers State Bank and had a savings account in her name transferred to a joint account with Edward. In January 1962, Edward withdrew the balance and purchased two savings certificates, one for $10,000 and one for $2,000 which were also held jointly.

In October 1962, unaccompanied by his mother and on his signature alone, Edward opened a joint savings account for himself and his mother with $3,500 which belonged to her.

Accompanying the court's order granting judgment notwithstanding the verdict was the following memorandum:

---

[1] The author of this opinion having been ill at the time of hearing has heard the oral arguments by tape recording.

"A careful examination of the evidence adduced at trial discloses no reasonable basis to support the claim of undue influence.

"The evidence is uncontroverted that the decedent, mother, was a strong-willed, self-sufficient woman clearly not susceptible to influence up to the time very near her death. She did not confide in her children with respect to her property. Her nature was such that she would permit no one the opportunity to influence her. At most, we have here a showing of benefit to the Defendant.

"Benefit coupled with the opportunity existing as a result of a parental relationship is insufficient. There must be evidence of the exertion or exercise of undue influence.

"Rather than proof that is clear and convincing, the record raises only a possible suspicion."

Although the court correctly recites the applicable law, we do not agree that plaintiff failed to sustain his burden of proving undue influence by clear and convincing circumstantial evidence.

Both plaintiff and defendant cite as controlling In re Estate of Olson, 227 Minn. 289, 297, 35 N. W. (2d) 439, 445. There we held:

"* * * While opportunity to exercise undue influence or the existence of a confidential relation between testator and a beneficiary are not, standing alone, proof of undue influence, yet when such opportunity arises out of a confidential relation and there are bequests to one sustaining the confidential relation and also active participation on his part in the preparation of the will, disinheritance of relatives, singularity of the provisions of the will, and acts of evasion on the part of the beneficiary sustaining the confidential relation, an inference of undue influence is permissible."

Applying the considerations we discussed in the Olson case, it appears that in 1961 Mrs. O'Rourke's health rapidly deteriorated. She was afflicted with hypertension, arthritis, and the usual disabilities of advanced age. In April of that year she was hospitalized, and again in May 1962 and June 1963. Ultimately, she was confined in a nursing home, where she died on July 30, 1963. During all of this period, Mrs. O'Rourke was seen by Edward almost daily. Both he and Joseph lived only a few

blocks away from her home. Joseph, however, had serious illness in his family and was himself stricken with a nervous breakdown. John lived some distance away on the east side of St. Paul and also had family illness. From 1961 until the time of Mrs. O'Rourke's death, Edward took care of her personal and financial problems. He accompanied her to church, shopped for her, and looked after her home. She gave him a power of attorney to sell the home but he did not exercise it. The record amply supports a finding that Edward had an opportunity to exercise undue influence and that during the last 2 or 3 years he enjoyed a confidential relationship with his mother which was not shared by his half brothers.

It is undisputed that Edward actively participated in both transfers. His mother accompanied him when he obtained the $12,000 joint account in January 1961. When the $3,500 joint account was created, his mother was neither on hand nor joined in signing the necessary documents.

Up until the time of these transfers, Mrs. O'Rourke had conferred on her three sons and their children gifts of nearly equal value. Edward had received bonds in the amount of $4,000, and his daughter a $1,000 bond. Joseph had received thirty-one $25 bonds beginning in 1942 or 1943 and an additional $5,000 in bonds. His child was given a $1,000 bond. John had received bonds in the value of $5,000, and each of his two children $1,000. Each son shared equally in the proceeds of the sale of the homestead. It realized $10,500. The transfers to Edward of accounts amounting to over $15,000 were not consistent with any previous pattern of giving. Nor was there any explanation for singling him out. What may have influenced the jury, and impresses us, is the fact that Edward steadfastly denied that his mother ever gave any reason for making these transfers. Although sharply interrogated on this question, Edward insisted that no conversation whatever indicated his mother's purpose or intention in showing him preference. Counsel argues, however, that the jury could infer the transfers were prompted by gratitude for the solicitous care Edward had shown her and her remorse over the circumstances of his birth.

Finally, there is evidence from which the jury could infer that Edward was evasive in withholding from his brothers the fact that these transfers had been effected. He was equally reticent about keeping them advised as to when and where his mother was hospitalized. Shortly before her death

at the beginning of her stay in the nursing home he discouraged their coming to see her.

Counsel for Edward argues that Mrs. O'Rourke was a strong-minded woman, experienced in business matters, mentally competent at the time of her death, and had ample time to revoke the transfers if they had been induced by coercive methods. In re Estate of Enyart, 180 Minn. 256, 263, 230 N. W. 781, 784. These are, to be sure, matters which the jury could consider. They do not, in our opinion, compel a finding there was no undue influence. Mrs. O'Rourke had openly discussed her financial affairs with Joseph when she was in good health, and from time to time had brought out and counted, in his presence, currency which she concealed in her home. When she became ill, it was natural for her to leave the details of her finances to her sons. The creation of these joint accounts and the giving of a power of attorney to Edward were consistent with her attempt to facilitate the handling of her affairs and the payment of her expenses. It is certainly not uncommon, when an elderly parent is incapacitated, to create a joint account on which children may draw without intending that the assets thus held should constitute a gift at the time of the parent's death. We have held that contestants have the burden of overcoming the presumption a jointly held account is intended to become the property of the survivor at the time of the other joint tenant's death. Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 435, 229 N. W. 865, 867. However, in the instant case, the jury could properly find that plaintiff has sustained that burden.

The conclusion we reach is supported by a long line of authority. In re Nelson's Will, 39 Minn. 204, 39 N. W. 143; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; In re Estate of Habhegger v. Habhegger, 154 Minn. 145, 191 N. W. 409; Rochester Loan & Trust Co. v. Pett, 159 Minn. 341, 199 N. W. 1; Dyste v. Farmers & Mechanics Sav. Bank, *supra*; In re Estate of Enyart, *supra*; Claggett v. Claggett, 204 Minn. 568, 284 N. W. 363; Hafner v. Schmitz, 215 Minn. 245, 9 N. W. (2d) 713; In re Estate of Wilson, 223 Minn. 409, 27 N. W. (2d) 429; Sorlie v. Thomas, 235 Minn. 509, 51 N. W. (2d) 592; Leuba v. Bailey, 251 Minn. 193, 88 N. W. (2d) 73; In re Estate of Anthony, 265 Minn. 382, 121 N. W. (2d) 772; Agner v. Bourn, 281 Minn. 385, 161 N. W. (2d) 813.

In the Fischer case, the jury found undue influence, and the trial court granted judgment notwithstanding the verdict. After stating that the law regards with extreme circumspection "large bequests by a parent of a number of children to one having the opportunity and manifesting a disposition to unduly influence the testator" (94 Minn. 426, 103 N. W. 505), we held that it was error to grant judgment notwithstanding the verdict, stating (94 Minn. 428, 103 N. W. 505):

"* * * [T]he rule remains that within familiar and conventional restrictions the question of undue influence is for the jury."

In the Habhegger case we cited Fischer in holding (154 Minn. 148, 191 N. W. 410):

"Great inequality in distribution among children, when the relations with all are cordial and amicable, coupled with confidential relationship between the deceased and the preferred beneficiary, and special opportunity on his part to exert undue influence over deceased, generally makes the question of the validity of the will one of fact."

For the reasons stated, it was error to grant judgment notwithstanding the verdict. Since the entire matter is before us, we also hold that it was error to grant a new trial. McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 343, 154 N. W. (2d) 488, 502.

Reversed.