## ANTON H. NORLANDER v. JAMES L. CRONK AND ANOTHER.

221 N. W. 2d 108.

August 2, 1974—No. 44495.

*V. J. Michaelson, Jr., Maun, Hazel, Green, Hayes, Simon & Aretz,* and *James A. Gallagher,* for appellants.

*Bailey, Howard & McRoberts, Donald V. Bailey,* and *Franklin Petri, Jr.,* for respondent.

Heard before Peterson, Kelly, and Yetka, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

Plaintiff, Anton H. Norlander, instituted this action in the Washington County District Court to rescind a warranty deed

he had executed conveying a farm to defendants, James Cronk and his wife Gretha Cronk. The case was tried before the court and an advisory jury. Rejecting the jury's finding to the contrary, the court found that defendants had exerted undue influence to obtain the conveyance. The only issue presented by defendants' appeal from the judgment is the sufficiency of the evidence to sustain the trial court's finding that such undue influence was practiced upon the elderly plaintiff as to require rescission of the deed.

Plaintiff, a man of 74 at the time of the trial, has spent his life on a farm of about 120 acres near Marine on St. Croix. While plaintiff's two older brothers were alive, the three brothers worked the farm together. However, both brothers have predeceased plaintiff. The events culminating in the institution of the present action began just after the death of plaintiff's second brother, Florian, in March 1971 left plaintiff to run the farm alone.

Plaintiff had a limited education and left school at age 16. Although he was still able to drive and to perform some farm chores, he failed to understand or to make coherent responses to a number of questions at the trial. At one point during the trial, he was unable to read the deed he had signed. There was also considerable testimony that plaintiff's elder brothers had handled the various business and financial affairs of the farm while they were alive.

After the death of his second brother on March 8, 1971, plaintiff was alone on the farm. Several of plaintiff's relatives testified that he was in a state of confusion at this time. As even James Cronk (hereafter defendant) admitted, plaintiff felt lost at the death and in need of help to run the farm. Defendant, a 34-year-old farmer and farrier, had known the Norlander family most of his life since he had grown up on a neighboring farm. However, after March 8, defendant's visits to the Norlander home became much more frequent than ever before and for a period were made daily. Plaintiff told defendant his worries

about paying expenses and running the farm; he in turn helped plaintiff to obtain social security benefits and life insurance proceeds. Defendant himself testified that plaintiff confided in him and agreed that plaintiff had a strong sense of faith and confidence in him.

It was undisputed that because of his concern about his ability to run the farm alone plaintiff wished to enter into an arrangement for defendant to rent and work the farm. The disputed issue was whether plaintiff also intended and wished to convey a future interest in his farm to defendants. According to defendant, about a week after the funeral plaintiff offered to give defendants the farm. Defendant also testified that plaintiff renewed the offer about a week later, that plaintiff stated that the Cronks had been good to him and that he did not want the land to go to the church or his relatives, and that either subsequently or before that time plaintiff contacted Wendell Johnson, a Scandia attorney, about making a gift of the land. Plaintiff, however, denied having such a conversation with Johnson, and the latter testified that he was not sure he spoke to plaintiff about drafting a deed. According to plaintiff, there was never an offer to give the land away but merely an offer to rent it.

Nevertheless, defendant arranged an appointment with Johnson for May 7, 1971. Mr. and Mrs. Cronk picked up plaintiff and drove him to the attorney's office that morning. It was admitted by defendant that Johnson was representing him and was paid by him. Johnson prepared a warranty deed conveying the Norlander farm, after a life estate reserved for plaintiff, to defendants. There was contradictory testimony as to whether the nominal $1 consideration recited was in fact paid.

While plaintiff did not deny that he signed a document which he later learned was a deed, the testimony conflicted sharply on whether he knew at the time the nature and effect of the document he signed. Although Johnson testified that plaintiff stated that he wished to make a gift and defendant stated that the deed was fully read and explained, plaintiff testified that he did not

know or understand what he was signing. Plaintiff added that he thought the deed was "some renting papers," that he did not read it, and that the others made him sign. Defendants did at least agree that rental arrangements were discussed at this meeting.

Several weeks later, on May 27, 1971, plaintiff and defendants drove to the courthouse at Stillwater, where the taxes were paid and the deed was recorded. In the following spring plaintiff finally became aware that title had actually been conveyed. Shortly thereafter, this suit was begun.

At the close of the case, the court submitted several questions to the advisory jury. The jury found that a confidential relationship had existed between plaintiff and defendant but also found that Mr. and Mrs. Cronk had not induced plaintiff to execute the deed by means of undue influence. However, the court declined to adopt the jury's finding of no undue influence and itself found that undue influence had been practiced. Since the court also found that there had been no ratification of the conveyance, it ordered rescission of the deed.

On appeal, defendants challenge the sufficiency of the evidence to support the trial court's findings that a confidential relationship existed, undue influence was practiced, and no ratification took place. In reviewing the findings of the trial court, we are bound by the standards set forth in Rule 52.01, Rules of Civil Procedure. In relevant part, that rule provides:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

We also note that because the jury acted in an advisory capacity only, the trial court was free to reject its findings, Agner v. Bourn, 281 Minn. 385, 400, 161 N. W. 2d 813, 823 (1968); and the only question before us is whether the court's own findings were clearly erroneous. Because we cannot conclude that they were clearly erroneous, we affirm the judgment.

The initial issue, whether a confidential relationship existed

between plaintiff and defendants, was answered by both the court and the advisory jury in the affirmative. We find little merit in defendants' arguments to the contrary. While it is true, as defendants argue, that friendship alone does not constitute a confidential relationship, friendship is one factor that may be considered. Voss v. Scott, 180 Minn. 88, 230 N. W. 262 (1930); Wells-Dickey Trust Co. v. Lien, 164 Minn. 307, 204 N. W. 950 (1925). Much more than friendship was involved here, however. The evidence showed that plaintiff was an elderly man, inexperienced in business and financial matters and confused and shocked in the period following his brother's death. He relied on defendant to act as his business advisor and to assist him in various matters, ranging from obtaining social security benefits to working the farm. Moreover, defendant himself testified that plaintiff had a strong sense of faith and confidence in him. Under these circumstances, the finding of a confidential relationship is clearly supported by the evidence.

Although the evidence is somewhat less clear on the question of undue influence, we do not believe that the court's finding can be considered clearly erroneous. As the parties agree, undue influence must be such influence as to overcome the free will of the individual. "The ultimate fact of undue influence may be and usually is established by circumstantial evidence. Where confidential relations exist between parties and one of them uses the relationship to secure an inequitable advantage, equity will set aside the transaction. Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287 [1909]; Ashton v. Thompson, 32 Minn. 25, 18 N. W. 918 [1884]; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891 [1904]; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502 [1905]; Shevlin v. Shevlin, 96 Minn. 398, 105 N. W. 257 [1905]." Agner v. Bourn, 281 Minn. 385, 390, 161 N. W. 2d 813, 817.

While the burden of proving undue influence is upon the party asserting that it was exercised, the existence of a confidential relationship makes the burden of proof somewhat simpler. Where a confidential relationship exists, a showing of an opportunity

to exercise undue influence, an inclination to do so, and a resulting disposition of property which ignores the natural recipients is usually sufficient to establish undue influence. See, e. g., Agner v. Bourn, *supra;* O'Rourke v. O'Rourke, 283 Minn. 293, 167 N.W. 2d 733 (1969); Hafner v. Schmitz, 215 Minn. 245, 9 N. W. 2d 713 (1943). Participation by the defendants in the transaction of transfer and the physical and mental state of the grantor are also factors to be considered.

In Agner v. Bourn, 281 Minn. 385, 392, 161 N. W. 2d 813, 818, we summarized the pertinent considerations in the following manner:

"Of course, it is not sufficient merely to show that the person benefited had an opportunity to exercise undue influence. There must be evidence that undue influence was in fact exerted, but, as noted, this may be shown by circumstantial evidence as well as by direct evidence. While it is true that some of the parties testifying were interested in the outcome of the suit, nevertheless, the question of the credibility of the witnesses was at all times one for the advisory jury and the trial court.

"Furthermore, undue influence might be inferred from a disposition of property in favor of the ones who had an opportunity to influence, while others who would be the natural recipients of a share in the property were ignored. * * *

"Some of the factors which the courts will consider in determining whether the grantor's free will has been overcome are his age, intelligence, experience, physical and mental health, and strength of character."

Leaving the matter of the credibility of witnesses to the trial court and viewing the record in the light most favorable to the prevailing party, we consider the evidence in this case sufficient to establish the essential elements supporting an inference of undue influence. Plaintiff was over 70 and inexperienced in business and financial matters. In the period of confusion following his brothers' death, he relied heavily on defendants' help and advice. Defendants arranged the appointment with the attorney

who prepared the deed and transported plaintiff to his office to execute the deed.[1] The conveyance to defendants was not among the most likely dispositions of plaintiff's property, and defendants had considerable opportunity to exercise undue influence over plaintiff. The ultimate choice between defendants' testimony that plaintiff wished to give them the land and understood the deed he signed and plaintiff's testimony that he had no desire to make such a gift and believed he was merely signing "renting papers" involved questions of the credibility of witnesses which were clearly matters for the trial court.

Defendants' final argument in support of reversal demands little consideration. Defendants contend that plaintiff ratified the conveyance by executing the deed and making the payment of property taxes required prior to recordation and by subsequently acquiescing in an arrangement whereby defendant rented the farm on a crop-sharing basis. While ratification may be an affirmative defense in a case of undue influence, the law is clear that there can be no ratification by one still under the effects of undue influence. "The continuance of undue influence makes ratification impossible." Agner v. Bourn, 281 Minn. 385, 394, 161 N. W. 2d 813, 819. The acceptance of a rental arrangement which plaintiff agreed existed and, indeed, thought was all that existed, could hardly amount to ratification of the transfer of title.

In the spring of 1972, when plaintiff became aware that title had actually been transferred, he took fairly prompt steps to undo the conveyance. The trial court was thus correct in ruling that there was insufficient evidence of ratification even to raise a jury question.

Affirmed.

---

[1] Nothing in the record or findings of the trial court intimates that Wendell Johnson, defendants' attorney, participated in defendants' acts of undue influence. It would appear that his sole role was in drafting the instruments of conveyance that defendants, without the knowledge of their attorney, had theretofore induced plaintiff to execute.