*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0805**

In re Estate of: Alice I. Engman, Decedent.

**Filed January 30, 2017
Affirmed
Johnson, Judge**

St. Louis County District Court
File No. 69DU-PR-15-54

James W. Balmer, Falsani, Balmer, Peterson & Quinn, Duluth, Minnesota (for appellant Dean Korach)

Michael E. Orman, Orman Nord & Hurd, P.L.L.P., Duluth, Minnesota (for respondents Lois LeBlanc and Karon Engman)

Considered and decided by Reyes, Presiding Judge; Tracy M. Smith, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The primary issue in this case is whether an elderly woman's daughter or daughter-in-law exerted undue influence over her when she executed a will that excluded another daughter who had been included in an earlier will. We conclude that the district court did not err by determining, on a motion for summary judgment, that the latest will is valid. We also conclude that the district court did not err by denying a motion for sanctions. Therefore, we affirm.

**FACTS**

This appeal concerns the estate of Alice Engman, who died in 2013 at the age of 99. She had three children from her marriage to John Engman: Bernice Korach, Lois LeBlanc, and Jack Engman. When Alice and John were divorced in 1962, Alice was awarded five parcels of rural property in Duluth on Munger Shaw Road. She sold the three western parcels and conveyed an eastern parcel to her son, Jack, and his wife, Karon Engman, who established their residence there. Alice moved into a trailer home on the other eastern parcel, where she lived for nearly 50 years. In the last stages of her life, that 36-acre parcel of property was her only significant asset.

Jack died in 1993. After his death, Alice and Karon had a joint bank account, which Karon used to pay Alice's bills. In 2010, Alice slipped and fell in her home, which prompted her to move in with Lois, her daughter. A year later, Alice moved into the Carefree Living assisted-living facility in Silver Bay. Lois visited Alice at Carefree Living nearly every day. Alice granted Lois a power of attorney, and Lois paid Alice's bills out of the joint checking account that Alice shared with Karon.

Alice executed three wills during her lifetime, all of which were drafted by the same attorney. Her first will, dated March 11, 2008, would have bequeathed her property in three equal shares to Bernice and Lois (her two daughters) and Karon (her daughter-in-law, who had survived her son Jack). Her first will specified that a grandson, Dean Korach, one of Bernice's four children, would serve as personal representative of the estate, for which he would have received a gift of $2,000.

Shortly after Alice executed her first will, Dean expressed his preference to not serve as personal representative. Accordingly, Alice executed a second will on July 9, 2008, which specified that a different grandson, Guy LeBlanc, a child of Lois, would serve as personal representative of the estate. Her second will also would have bequeathed her property in three equal shares to Bernice, Lois, and Karon, and it provided that if any of the three beneficiaries were to predecease Alice, that beneficiary's children would inherit their mother's share.

In May 2012, Alice contacted her attorney for the purpose of making another change to her will. Alice met with her attorney at Carefree Living. The attorney testified in deposition that Alice told him that she did not want to leave any property to Bernice because Bernice was ill and was applying for medical assistance and that she did not want one-third of her estate to be subject to a medical-assistance lien. In addition, Alice told the attorney that she was upset with Bernice's children because they had attempted to pressure her into selling her real property to them for less than what it was worth. The attorney testified that he prepared a new will in accordance with Alice's wishes.

Alice executed the third will on June 1, 2012, at Carefree Living. The third will was different from the second will in that it bequeathed Alice's property to only Lois and Karon and specifically excluded Bernice and her children. Two employees of Carefree Living testified in depositions that their supervisor asked them to serve as witnesses to Alice's execution of the will, that Alice appeared to be competent, and that Lois was not in the room when Alice executed the documents.

Bernice died in October 2012. Alice died in January 2013. Approximately two years later, in March 2015, Dean filed a petition for formal adjudication of intestacy. In April 2015, Lois and Karon moved for summary judgment, arguing that Alice's June 2012 will conclusively establishes that she did not die intestate. In May 2015, Lois and Karon moved for sanctions on the ground that Dean petitioned for an adjudication of intestacy despite knowing that Alice had executed a will. In July 2015, the district court denied Lois and Karon's motion for summary judgment on the ground that Dean may attempt to prove his claims of lack of capacity and undue influence. At the same time, the district court denied Lois and Karon's motion for sanctions. In February 2016, Lois and Karon again moved for summary judgment, arguing that there is insufficient evidence to support Dean's allegations that Alice lacked testamentary capacity or that Lois or Karon exerted undue influence on Alice. In April 2016, the district court agreed with Lois and Karon's argument and granted their second motion for summary judgment.

Dean seeks review of the district court's grant of the second summary-judgment motion by way of a notice of appeal. Lois and Karon seek review of the district court's denial of the sanctions motion by way of a notice of related appeal.

**D E C I S I O N**

### I. Undue Influence

Dean argues that the district court erred by granting Lois and Karon's second motion for summary judgment.

A district court must grant a motion for summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

4

if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment and "view[s] the evidence in the light most favorable to the party against whom summary judgment was granted." *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015).

Undue influence is "influence of such a degree exerted upon the testator by another that it destroys or overcomes the testator's free agency and substitutes the will of the person exercising the influence for that of the testator." *In re Wilson's Estate*, 223 Minn. 409, 413, 27 N.W.2d 429, 432 (1947). A party seeking to prove undue influence must prove that the influence "was so dominant and controlling of the testator's mind that, in making the will, [she] ceased to act of [her] own free volition and became a mere puppet of the wielder of that influence." *In re Reay's Estate*, 249 Minn. 123, 126-27, 81 N.W.2d 277, 280 (1957). "Evidence which raises merely a suspicion and shows no more than a motive for exerting and an opportunity to exert undue influence is insufficient proof thereof, though coupled with proof of inequality in the terms of the will." *In re Mardsen's Estate*, 217 Minn. 1, 10, 13 N.W.2d 765, 770 (1944). Undue influence may be proved by either direct evidence or circumstantial evidence. *Agner v. Bourn*, 281 Minn. 385, 392, 161 N.W.2d 813, 818 (1968). The supreme court has identified several forms of circumstantial evidence that may be introduced to prove undue influence:

> the opportunity to exercise it, active participation in the preparation of the will by the party exercising it, a confidential relationship between the person making the will and the party exercising the influence, disinheritance of those whom the decedent probably would have remembered in his will, singularity of the provisions of the will, and the exercise of influence or persuasion to induce him to make the will in question.

*Wilson's Estate*, 223 Minn. at 413, 27 N.W.2d at 432.

In this case, the district court analyzed the parties' arguments by discussing each of the forms of circumstantial evidence identified in *Wilson's Estate*. Specifically, the district court reasoned that the evidence in the summary-judgment record, when viewed in the light most favorable to Dean, shows that Lois and Karon had an opportunity to exercise influence over Alice and that the provisions in Alice's will were singular in that they "significantly and uniquely change[d] the disposition of Decedent's estate." But the district court also reasoned that the evidence in the summary-judgment record did not show that Lois or Karon actively participated in preparing the will, that they had a confidential relationship with Alice, that Bernice or her children would have inherited property from Alice in the absence of undue influence, or that Lois or Karon actually exercised influence or persuasion over Alice in her making of the third will. The district court concluded that Dean did not produce sufficient evidence to create a genuine issue of material fact as to whether Lois or Karon exercised undue influence over Alice when Alice executed her third will.

Dean makes three specific arguments for reversal.

6

## A.

Dean argues that the district court erred by considering the deposition testimony of the attorney who assisted Alice with her third will. He contends that the attorney's testimony is not credible because the attorney recently was disciplined for professional misconduct, including the making of a knowingly false statement to a court.

The district court considered and rejected this argument, which Dean did not include in his motion papers but presented to the district court orally at the summary-judgment hearing. In its order, the district court questioned whether Dean would be allowed to introduce extrinsic evidence of the attorney's lack of credibility. *See* Minn. R. Evid. 608(b). The district court also noted the absence of caselaw stating that the attorney's testimony could not be considered in any way. And the district court noted that the attorney's testimony was corroborated by other evidence. We note that Dean did not attempt to attack the credibility of Alice's attorney when deposing him, which means that the summary-judgment record contained no impeachment evidence. We also note that Dean did not introduce any evidence that directly contradicts the attorney's testimony.

For all of these reasons, the district court did not err by considering the deposition testimony of Alice's attorney.

## B.

Dean argues that the district court misanalyzed the question whether there was "a confidential relationship between the person making the will and the party exercising the influence." *See Wilson's Estate*, 223 Minn. at 413, 27 N.W.2d at 432. Dean further argues that, if his evidence of a confidential relationship is recognized, he will have established a

majority of the relevant factors, which he contends would warrant a trial or a judgment in his favor.

Dean's second argument is based on the mistaken premise that the various forms of circumstantial evidence identified in *Wilson's Estate* constitute a multi-factor balancing test that requires consideration of each factor in every case and whose result depends on the number of factors implicated and the weight of the evidence supporting each factor. The district court's analysis appears to be based on the same premise because the district court's order discusses each of the items identified in *Wilson's Estate*, regardless of whether Dean offered such evidence. The district court may have performed such an analysis because the supreme court has referred to the various forms of circumstantial evidence as "factors," *see id.*, and because this court subsequently has summarized the applicable law in a manner that could be read to suggest a multi-factor balancing test, *see In re Estate of Opsahl*, 448 N.W.2d 96, 100 (Minn. App. 1989); *In re Estate of Ristau*, 399 N.W.2d 101, 104 (Minn. App. 1987); *In re Estate of Olsen*, 357 N.W.2d 407, 411-12 (Minn. App. 1984), *review denied* (Minn. Feb. 27, 1985). We read *Wilson's Estate* to say that there are various ways in which a party might prove undue influence, depending on the facts of a particular case, and that a party seeking to prove undue influence may choose to introduce, among other things, any of the forms of circumstantial evidence identified in that opinion. *See Wilson's Estate*, 223 Minn. at 413, 27 N.W.2d at 432.

With that understanding, we consider Dean's evidence of a confidential relationship. He points to evidence that Karon paid Alice's bills using a joint checking account and evidence that Alice granted Lois a power of attorney. The district court

accepted that evidence as true but said that it did not go "beyond what could be expected in a close relationship between a mother and daughter or mother and daughter-in-law." The district court also reasoned that "there is no evidence that either woman abused their responsibilities, or that [Alice] was sufficiently dependent on either woman as to suggest she was controlled by them." For those reasons, the district court concluded that "there is insufficient evidence to support an inference that a confidential relationship existed" between Alice and Karon or Lois.

A confidential relationship may exist if an elderly person relies on the assistance of another person in business and financial matters. *See, e.g.*, *Norlander v. Cronk*, 300 Minn. 471, 475, 221 N.W.2d 108, 111 (1974). The existence of a confidential relationship may suggest that a confidante has exerted undue influence. *See Marsden's Estate*, 217 Minn. at 11-12, 13 N.W.2d at 771. But the mere existence of a confidential relationship does not necessarily imply the exercise of undue influence. *See Wilson's Estate*, 223 Minn. at 413, 27 N.W.2d at 432. Indeed, if a confidential relationship exists between relatives, this fact tends to negate, rather than prove, undue influence. *Marsden's Estate*, 217 Minn. at 11-12, 13 N.W.2d at 771; *In re Estate of Larson*, 394 N.W.2d 617, 619 (Minn. App. 1986), *review denied* (Minn. Dec. 12, 1986); *In re Estate of Anderson*, 379 N.W.2d 197, 201 (Minn. App. 1985), *review denied* (Minn. Feb. 19, 1986). Accordingly, the evidence that Lois and Karon assisted Alice in financial matters is evidence of a confidential relationship, but that evidence is not, in itself, determinative of the question whether Karon or Lois unduly influenced Alice to execute the third will. *See Wilson's Estate*, 223 Minn. at 413,

27 N.W.2d at 432. Whether the evidence is capable of proving undue influence in combination with other evidence is a question that we consider below.

Thus, the district court did not commit reversible error in analyzing whether Dean introduced evidence of a confidential relationship between Alice and Karon or Lois.

## C.

Dean argues that the district court erred by not recognizing that the reasonable inferences from his evidence are capable of proving that Karon or Lois exercised undue influence over Alice.

To prevail on a claim of undue influence, Dean must have "evidence that undue influence was *in fact* exerted." *See Reay's Estate*, 249 Minn. at 126-27, 81 N.W.2d at 280 (emphasis added). Moreover, the evidence must show "not only that the influence was in fact exerted, but that it was so dominant and controlling of the testator's mind that, in making the will, he ceased to act of his own free volition and became a mere puppet of the wielder of that influence." *Id.* "Evidence which raises merely a suspicion and shows no more than . . . an opportunity to exert undue influence is insufficient . . . ." *Marsden's Estate*, 217 Minn. at 10, 13 N.W.2d at 770.

Dean's circumstantial evidence is insufficient to create a genuine issue of material fact. In his deposition, he did not disclose any evidence that Karon or Lois actually influenced Alice to execute the third will. Dean suspects Lois of having done so, but he has nothing more than suspicion, which is insufficient by itself. *See id.* Likewise, Dean's siblings are unaware of any facts that would suggest that Karon or Lois exercised undue

influence over Alice. Lois and Karon denied any involvement in the preparation or execution of the third will, and Dean has no evidence to contradict their testimony.

Furthermore, the evidentiary record contains evidence that Alice had affirmative reasons for executing her third will. As her attorney testified in deposition, Alice wanted to avoid a situation in which the property she left to Bernice would be subject to a medical-assistance lien, and Alice was upset with Bernice's children because they had attempted to pressure her into selling her property to them for less than it was worth. The evidentiary record corroborates both of these reasons. The record shows that Bernice was in declining health and on medical assistance in May 2012 and that she died in October 2012, three months before Alice died. The record also contains two letters that Dean wrote to Alice in March 2012 concerning Dean's interest in purchasing Alice's real property, and both letters reveal that the matter was somewhat contentious and had created friction between them. In addition, Dean's sister Becky Korach stated in her deposition that Alice was "fiercely independent," which tends to suggest that she would decide for herself whether to execute the third will. In short, Dean's undue-influence argument is based solely on speculation, but "mere speculation, without some concrete evidence, is not enough to avoid summary judgment." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotation omitted).

Thus, the district court did not err by granting Lois and Karon's motion for summary judgment.

## II. Sanctions

Lois and Karon argue that the district court erred by denying their motion for sanctions. They contend that sanctions are appropriate because Dean and his attorney filed a petition for a formal adjudication of intestacy despite knowing that Alice had executed a will.

Lois and Karon sought sanctions under rule 11 of the Minnesota Rules of Civil Procedure and section 549.211 of the Minnesota Statutes. Under the rule, whenever an attorney files a pleading, motion, or other paper with the court, the attorney is "certifying that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Minn. R. Civ. P. 11.02. An objective standard of reasonableness applies. *Uselman v. Uselman*, 464 N.W.2d 130, 142-43 (Minn. 1990). A similar standard is imposed by the statute. *See* Minn. Stat. § 549.211 (2016). If an attorney violates the rule or the statute, a district court has discretion to impose sanctions. *Kalenburg v. Klein*, 847 N.W.2d 34, 41-42 (Minn. App. 2014). This court applies an abuse-of-discretion standard of review to a district court's decision whether to impose sanctions. *In re Progressive Ins. Co.*, 720 N.W.2d 865, 874 (Minn. App. 2006), *review denied* (Minn. Nov. 22, 2006).

In this case, the district court ruled on the motion for sanctions shortly after the case was commenced and approximately nine months before granting Lois and Karon's second motion for summary judgment. The district court determined that sanctions were

12

inappropriate because Dean and his attorney were unaware of the June 2012 will when they commenced this action and because Dean's attorney consulted with an attorney with more experience in probate matters, who advised that the petition that was filed would be an appropriate way to seek relief on the ground that the third will was invalid. The district court also reasoned that, even if Dean's petition did not reflect the best form of pleading, it would effectively prompt a resolution of the parties' dispute.

We acknowledge some uncertainty in the record as to whether the district court was correct in stating that Dean and his attorney were unaware of the June 2012 will when they commenced this action. We also note that Dean was undoubtedly aware of Alice's first will, which named him as personal representative, which caused him to request that she put those responsibilities on someone else, which she did in her second will. Nonetheless, the district court's decision appears to be based primarily on Dean's attorney's reliance on another lawyer with expertise in probate law and on the observation that Lois and Karon were not prejudiced by the form and content of Dean's pleading. The district court did not abuse its discretion by declining to impose sanctions for those reasons.

**Affirmed.**